Argued October 5, 1960, reversed February 8, 1961

# HAUGEN *v.* GLEASON ET AL

359 P. 2d 108

*Frank L. Whitaker,* Portland, argued the cause and submitted briefs for appellant.

*Robert M. Christ,* Deputy District Attorney, Portland, argued the cause for respondents. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

GOODWIN, J.

Plaintiff, a subdivider of land, appeals from a declaratory decree upholding the right of Multnomah County to charge a fee of $37.50 per subdivision lot

as a condition precedent to approval of a plat which plaintiff has tendered for filing.

In 1955 the Legislative Assembly enacted comprehensive statutes relating to platting, subdividing, and partitioning of land. Oregon Laws 1955, ch 756, replaced several sections and expanded other sections of ORS ch 92, where the relevant statutes are now found. For the purposes of this case ORS 92.044 (1) is the controlling section.[1] It reads as follows:

> "The governing body of a county or a city may, by regulation or ordinance, adopt standards, in addition to those otherwise provided by law, governing, in the area over which the county or the city has jurisdiction under ORS 92.042, the approval of plats of subdivisions and of partitioning of land by creation of a street or way where the additional standards are considered necessary to carry out development patterns or plans and to promote the public health, safety or general welfare. Such standards may include, taking into consideration the location and surrounding area of the proposed subdivisions, requirements for placement of utilities, for the width and location of streets or for minimum lot sizes and such other requirements as the governing body considers necessary for lessening congestion in the streets, for securing safety from fire, flood, pollution or other dangers, for providing adequate light and air, for preventing overcrowding of land or for facilitating adequate provision of transportation, water supply, sewerage, drainage, education, recreation or other needs."

Assuming to act pursuant to the authority of ORS 92.044 (1), Multnomah County adopted a subdivision code which contains the following regulation:

> "4.10. The Planning Commission may require,

[1] ORS 215.150, also enacted in 1955, refers to subdivision of land under the regulatory powers granted to counties in the field of planning and zoning, but is not involved in this appeal.

as a condition of approval of the subdivision, the dedication of land for park purposes, or money in lieu of land, in accordance with standards adopted by the Planning Commission. Such money shall be used for land acquisition and may be given either to the County or the School District of the area, as specified by the Planning Commission."

In June 1955, the Board of County Commissioners adopted, in the form of an order, certain recommendations of the County Planning Commission, and set a fee of $37.50 per subdivision lot as a condition of approval of any proposed subdivision. The plaintiff thereafter paid the $37.50 per lot under protest and commenced this suit for declaratory relief and for a refund.

Regulation 4.10 allows the county to demand either land or money, in its discretion. There is no expressed limit upon the amount of either land or money which may be required as a condition precedent to the approval of a proposed subdivision. Neither is there a requirement that the money paid by the subdivider be expended by the county in the vicinity of the particular subdivision. The money could be spent anywhere in the county.

The county has not exercised its claimed right to demand land instead of money. It was stipulated that if the county did demand a dedication of land for park purposes in any given subdivision the demand would be for .015 acres of land for each lot in the subdivision.

The county also conceded that it charges a separate fee for examining and recording plats. (Authorized by ORS 92.100 (2) and 205.350.)

The issue before this court is whether the county can charge a subdivider, in addition to all inspection

and filing fees, a separate fee for the stated purpose as a condition to approval of his proposed plat.

Regulation 4.10, which the county says is an implementation of the quoted statute, purports to authorize two distinct governmental actions. The first exercise of governmental power is the control over the use of land. The second is the levy of money.

Whether the county may lawfully demand the dedication of land for park purposes as a condition of approval is not squarely before the court, because the county has not chosen to follow that route. We will assume without deciding that the delegation of power contained in ORS 92.044 (1) is broad enough to authorize that part of Regulation 4.10 which provides for a dedication of land for park purposes. Park land dedicated within a subdivision would presumably benefit the balance of the subdivision.

The record shows that there is a very practical reason why the county has chosen to demand money in lieu of land. At least in the smaller subdivisions, the proposal to take dedications of modest amounts of land presented the problems of maintenance, inadequate surface area, and inconvenient location, among others.

The decision to seek money with which to buy other land which might benefit another subdivision, or the public generally, took the county into the borderland area between the police power and the power to tax.

The trial court held that the fee charged by the county was merely a tool to regulate the subdividing of land and was therefore within the regulatory powers conferred by statute.

The subdivider contends that the fee is a revenue measure designed to produce money for public purposes and is therefore void as a tax not within the power of the county to levy. Whether or not the sub-

divider is correct, it is still necessary to define the power sought to be exercised. If the $37.50 is a tax, the authority to levy it is lacking. If the fee charged is merely a tool in the regulation of the division and sale of land for residential purposes, the authority expressed in the statute is broad enough to cover reasonable methods of regulation.

■ As pointed out in Probert, *Law and Persuasion: The Language Behavior of Lawyers,* 108 Pa L Rev 35, persuasive definitions can sometimes evoke different meanings in different contexts. Thus, Cooley refers to "regulation" and "revenue" in discussing the police power and taxation:

> " 'The distinction between a demand of money under the police power and one made under the power to tax is not so much one of form as of substance. * * * If the purpose is regulation the imposition ordinarily is an exercise of the police power, while if the purpose is revenue the imposition is an exercise of the taxing power and is a tax. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. * * * Only those cases where regulation is the primary purpose can be specially referred to the police power. If revenue is the primary purpose and regulation is merely incidental the imposition is a tax. * * *' " *Terry v. City of Portland,* 204 Or 478, 501, 269 P2d 544, quoting from 4 Cooley, Taxation (4th ed) 3509, § 1784.

Accepting Cooley's test, it becomes necessary to examine the challenged scheme to determine whether the primary purpose of the county is to accomplish desired public benefits which cost money, or whether the primary purpose is to regulate future subdivisions.

In form, Regulation 4.10 speaks in regulatory language, and requires the dedications of land and

payment of money "in accordance with standards adopted by the Planning Commission."

The next sentence, however, reads:

"* * * Such money shall be used for land acquisition and may be given either to the County or the School District of the area, as specified by the Planning Commission."

The above-quoted language has only one meaning: the collection of money from subdividers is for the purpose of acquiring land. Since the ordinance contains nothing to relate the money, or its expenditure, to the land being subdivided, the result is that the money will become part of the public funds of the county or the school district as the case may be.

■■ Every presumption of legislative validity must be granted. *Wright v. Blue Mt. Hospital Dist.*, 214 Or 141, 144, 238 P2d 314. But Regulation 4.10 authorizes the county to lay a tax upon one class of landowners for a public purpose which may be, but need not be, related to the activity being regulated. The regulation cannot stand because it fails to limit the use of money so produced to the direct benefit of the regulated subdivision.

Returning to the statute under which the county assumes to act, we find:

"The governing body * * * may * * * adopt standards * * * governing * * * the approval of plats of subdivisions * * *. Such standards may include, * * * [we tabulate for ease of reference:]

requirements for placement of utilities,
for the width and location of streets
or for minimum lot sizes
and such other requirements as the governing body considers necessary for lessening congestion in the streets,

> for securing safety from fire, flood, pollution or other dangers,
>
> for providing adequate light and air,
> for preventing overcrowding of land
> or for facilitating adequate provision of transportation, water supply, sewerage, drainage, education, recreation or other needs."

All of the above purposes for which standards may be adopted contemplate regulation of activity. The power to regulate is clearly delegated by the legislature. There is, however, nothing in the quoted statute which delegates a power to levy any tax or to produce revenue. The power to tax is never inferred. *Corbett v. City of Portland,* 31 Or 407, 414, 48 P 428. Nor is the power to tax inherent in a local government. *Eugene Theatre et al v. Eugene et al,* 194 Or 603, 617, 243 P2d 1060.

If ORS 92.044 permits the county to demand money from a subdivider to buy land to be used for park purposes somewhere in the vicinity of the subdivision, it equally follows that the same statute authorizes the county to demand additional money to buy and equip schools, fire stations, police stations, and to defray all or part of the expenses of each of the other objectives tabulated above. No such legislative intent can be found.

It is thus clear that ORS 92.044 authorizes the county to regulate only, not to tax. The enabling legislation marks out the extent of the state's legislative power which it chose to confer upon local governments in the regulation of subdivisions. When the county went beyond the enactment of regulatory rules within the subject matter outlined above and sought to produce revenue from subdividers to accomplish desirable ends indirectly, it exceeded its authority.

In a somewhat similar case, the Supreme Court of Illinois held in 1960 that a local ordinance requiring subdividers to obtain the approval of the school district as a condition to approval of a plat by the planning commission was void when it appeared that the school district required the payment of $325 per lot as a condition of its approval. *Rosen v. Village of Downers Grove,* 19 Ill2d 448, 167 NE2d 230. The court declined to strike down the entire planning ordinance, which contained provisions for the dedication of land for parks and school grounds, but held that the enabling act under which the ordinance was purportedly drawn did not authorize the requirement that money be paid to the school district for general educational purposes.

■ The Multnomah County ordinance presently before the court differs from the ordinance under consideration in the Illinois case, but each ordinance suffers from the common defect. The statute in neither case authorizes the attempted exercise of power. To the extent Regulation 4.10 permits the collection of money in excess of inspection fees of the type authorized by ORS 92.100, the ordinance exceeds the authority contained in ORS 92.044.

■ Since we find that Multnomah County Planning Regulation 4.10 is void for the reasons set forth above, the cause must be reversed with directions to grant the landowner the refund which he demanded.

■ We do not reach certain broad constitutional questions urged upon us by the parties for the reasons stated in *Fed. Cartridge Corp. v. Helstrom,* 202 Or 557, 564, 276 P2d 720. The local ordinance being without statutory authority, it is not necessary to consider the constitutionality of the statute.

Reversed, with costs to the plaintiff.