Hallows, J.
(dissenting). I must disagree with the interpretation that sec. 236.45, Stats., authorizes the land-dedication requirement found in secs. 8.02 and 8.03 of the village ordinance. I can find no such grant of power in the language “other surveying, monumenting, mapping and approving requirements for such division.” A liberal construction required by sec. 236.45 (2) (b) does not justify the disregarding of a fundamental rule of construction. The conferring of such an important power as a police power whose exercise curtails the rights of individuals should be expressed in nothing less than clear and concise language. Consequently, the power to require land to be given for *628 school and park purposes, as a condition of the approval by a municipality of a plat .of a subdivision should be granted in more definite language than the terms “approving requirements” and “to facilitate adequate provision for . . . schools, parks, playgrounds.” Specific language authorizing the requirements for dedication of land for school and park purposes could have been used as it has been used in reference to roads, waters and sewers in sec. 236.13 (2) (a) and (b).
Assuming sec. 236.45, Stats., authorizes the land-dedication provisions of the village ordinance, the provisions especially the requirement of the payment of $200 in lieu of land dedication constitute an unconstitutional taking of private property for public purposes. The majority opinion reasons these provisions may be justified on the ground a subdivider receives some benefit by the approval of the plat and in return the municipality may require him to dedicate part of his land to meet a demand of the municipality because of the influx of people to the community who occupied the subdivided lots. That may be a justification if there is a reasonable relationship between the amount of land taken and the need of the proposed plat for parks and schools. The majority opinion seems to indicate prior need for public land caused by other subdividers who have not so contributed justifies the exaction of land from a subsequent subdivider.
By analogy, any dedication of land for parks and school purposes or. money in lieu thereof should be governed by the same rules which apply to public roads and sewer and water in the subdivision. When land is dedicated for public streets or for the furnishing of water mains and sewers, their location insures some definite benefit to the rest of the land in the plat. While these are of special benefit to the lots, they are, of course, incidentally of benefit to the community at large.
In respect to the alternative provision for the payment of money in lieu of land for school and park purposes, I find no *629 authority for the municipality to enact such an alternative and no restriction or requirement that the money be used for parks and schools in the vicinity of the subdivision. The money may be used anywhere in the municipality and is not restricted for the direct benefit of the subdivision. Consequently, this requirement of the payment of a fee which a municipality has the option to demand in lieu of land is nothing more than a revenue-raising device for the general welfare of the municipality and as such is in the nature of a tax and cannot be justified as an exercise of the police power. Milwaukee v. Milwaukee and Suburban Transport Corp. (1959), 6 Wis. (2d) 299, 94 N. W. (2d) 584; 51 Am. Jur., Taxation, p. 35, sec. 3, and p. 46, sec. 12. I think the trial court was correct in finding the requirement to be in the nature of a tax and the village had no power and was not authorized by the legislature to impose it. Whitney v. Department of Taxation (1962), 16 Wis. (2d) 274, 114 N. W. (2d) 445. There is no implementing authorization conferring the power to impose such a tax nor does the home-rule amendment (sec. 3, art. XI, Wis. Const.) authorize it since a tax is not a local matter. Plymouth v. Elsner, ante, p. 102, 135 N. W. (2d) 799. Being in the nature of a tax it makes no difference whether the tax is a property tax bound by the uniformity requirement or an excise tax not so restricted.
It is quite apparent the so-called equalizing fee bears no reasonable relationship to the subdivision since it is not restricted to its benefit. The placing of such payments in the general treasury of the municipality cannot be justified on the theory that parks and schools will eventually be built or have been built in the subdivision area out of the general fund. Such a view ignores the vital distinction between the taxing power and the police power.
The unconstitutionality of the provisions requiring sub-dividers to pay such fees has been held in Coronado Develop *630 ment Co. v. McPherson (1962), 189 Kan. 174, 368 Pac. (2d) 51; Haugen v. Gleason (1961), 226 Or. 99, 359 Pac. (2d) 108; Resen v. Downers Grove (1960), 19 Ill. (2d) 448, 167 N. E. (2d) 230. Under slightly more narrow enabling statutes the requirement of payment of fees for approval of subdivision plats was found unauthorized in Kelber v. Upland (1957), 155 Cal. App. (2d) 631, 318 Pac. (2d) 561, and Santa Clara County Contractors & Homebuilders Asso. v. Santa Clara (1965), 232 Cal. App. 564, 43 Cal. Rptr. 86. A town ordinance which requires the dedication of land or payment in lieu thereof for a neighborhood-park playground for recreational purposes was held unconstitutional so far as it provided for the payment of money in lieu of a dedication because the payment exacted could be spent on any recreational area in the city and not necessarily for the benefit of the subdivision. Gulest Associates, Inc., v. Newburgh (1960), 25 Misc. (2d) 1004, 209 N. Y. Supp. (2d) 729; see also Jenad, Inc., v. Scarsdale (1965), 23 App. Div. (2d) 784, 258 N. Y. Supp. (2d) 777, which held a village code was unconstitutional insofar as it provided for payment in lieu of dedication of land where the statute authorizing a land requirement was silent as to the alternative payment.
I would affirm.