Van Voorhis, J.
(dissenting). The principle of decision in this case would constitutionally allow municipal officers to prohibit real estate development in cities, towns and villages unless the newcomers pay '¡whatever sums of money the local public authorities may decide arbitrarily to impose upon them for the privilege of moving into the community, to be spent on schools, public buildings, police and fire protection, parks and recreation or any other general municipal purpose past, present or to come, and without relation to special benefits or assessed valuation. The comment is apt by the late Chief Justice Vanderbilt, speaking for the Supreme Court of New Jersey in Daniels v. Borough of Point Pleasant (23 N. J. 357, 362): “ The philosophy of this ordinance is that the tax rate of the borough should remain the same and the new people coming into the municipality should bear the burden of the increased costs of their presence. This is so totally contrary to tax philosophy as to require it to be stricken down; see Gilbert v. Town of Irvington, 20 N. J. 432 (1956).”
This enormous increase in the discretionary power of local public officials in violation of what would formerly have been considered to be the constitutional rights of property makes its appearance in the form of a seemingly innocuous assessment against the development of vacant land for the socially acceptable purpose of public parks and recreation. Once the constitutional power to do this is established, however, the power can be extended by statute or ordinance to any other public purpose. There is no constitutional authority, by this means, to prevent city dwellers from migrating to the suburbs or country to live in tracts which are otherwise suitably developed, whenever it *87 seems desirable to those who are already there to prevent them from coming except at a price. Not only is there no statutory authority for the requirement by the Village of Scarsdale that developers pay into the park fund for the acquisition and improvement of recreation and park lands for general village use, but under the resolution of the Village Board the allocation of this burden is purely arbitrary. The validity of this impost appears to depend, according to the majority opinion, on whether it is to be classified as a fee or a tax. If it is a fee, the reasoning runs, it does not have to be allocated according to any basis except such apportionment as the Village Trustees may. choose to impose. The name given to it is not important. In substance this is a levy upon the approval of subdivision maps, without which lands cannot be sold or built upon, to serve, a general public purpose of the village conferring no special benefit upon this subdivision, and inflexibly imposed at $250 a lot in the ease of any subdivision map anywhere in the village, without regard to the location, size,, shape, value or restrictions of the lot. In the leading case of Stuart v. Palmer (74 N. Y. 183, 188-189) the classic statement was made that while it is not disputed that the Legislature has power to impose taxes and assessments for public purposes, unlimited except by the Federal Constitution, “there must be apportionment of the burdens, either among all the property-owners of the State, or of the local division of the State, or the property-owners specially benefited by the improvements. In either ease, if one is required to pay more than his share, he receives no corresponding benefit for the excess, and that may properly, be styled extortion or confiscation, A tax or assessment upon property arbitrarily imposed, without reference to some system of just apportionment, could not be upheld.”
Unless the courts are to surrender their function of protecting basic property rights, and leave their safeguarding to the discretion of administrative and frequently politically minded public officials, these basic principles of taxation must be observed. Their defiance by the decision about to be rendered seems to us to be incontestable. No one contends that this park and recreation fund of the Village of Scarsdale is for the special benefit of this real estate tract; it can be expended only for the benefit of the village as a whole yet every lot in every new tract *88 is required to be assessed at $250 wherever the Planning Commission so directs. This sum is prescribed by the Village Code regardless of whether the lot is worth $2,000 or $25,000, or whether the size is two acres or half an acre, and regardless of where it is located in the village or whether it will ever receive any benefit from some general village project not yet conceived.
This is a different question .from whether, in suitable cases, areas may be required under section 179-1 of the Village Law. to be set aside for a park or parks suitably located for playground or other recreational purposes for the benefit of lot owners in the subdivision. Even so it is stated by section 179-m that the owner of the land or his agent who files the plat may add a notation to the effect that no offer of dedication of such highways or parks is made to the public. Comparable sections were added to the General City Law by chapter 690 of the Laws of 1926 (General City Law, § 33) and to the Town Law by chapter 175 of the Laws of 1927 (Town Law, former § 149-n). These statutes were adopted on the recommendation of the New York State Legislative Commission on Zoning, of which Mr. Edward M. Bassett was General Counsel, which submitted a model -zoning enabling act containing the following comment regarding the foregoing provisions (1925 Committee Bulletin No. 10, footnote to § 7 thereof): “ This form does not relate to the acquirement of any street or park. That entire subject is within the field of eminent domain. This form of statute merely provides a method of creating non-buildable strips of land (mapped streets), and other open places on the official map. or plan. They may never become public streets or public parks so far as this statute is concerned. Their becoming publicly owned land depends on whether the owner desires to cede or offer dedication, whether the municipality desires to accept a cession or dedication, or whether the municipality desires to take title by condemnation.”
The intention, so expressed, was to insure that, where suitable for parks, not all of the areas in subdivisions should be devoted to building lots, and to set aside suitable areas for park or recreation purposes and streets for the private use of the lot owners in' the subdivision unless voluntarily dedicated by the tract owner to the municipality, or condemned by the municipality.
*89 This provision of ilic Village Code Is unauthorized by section 179-1 of the Village Law as well as being unconstitutional. That section is long and explicit, but it says nothing about payments to the village to be absolved from a requirement that land in the subdivision be set aside for park purposes. Upon the contrary, in directing that land in the subdivision be earmarked for park use, it provides that title is to be transferred to the village only at the option of the tract developer, and, by necessary inference, that, if the tract does not contain land “ suitably located for playground or other recreational purposes ”, it is not a “ proper case ” to require land within the subdivision to be set aside for these purposes which should not be “required by the planning board”. In other words, the statute authorizes the planning board, as a condition of approval of the plat, reasonably to require some land in the subdivision to be set aside as park in suitable instances but, if it be not a proper case for the exercise of such power, the power of the planning board ends. The mere language in the statute that the planning board may waive requirements of section 179-1 “ subject to appropriate conditions ” adds nothing here. If the proposed subdivision does not contain land suitable for park purposes, there is nothing for the planning board to waive inasmuch as it can only require land in the subdivision to be set aside for parks in proper cases. If it be not a proper case, as the planning board has decided here, it has no further power in the matter.
If the $6,000 paid by plaintiff to Scarsdale could be used for the “ acquisition and improvement of recreation and park lands ” for the village generally, as the language of the fund says, the exaction would be in the nature of a tax and not a fee ór assessment for special benefits (see Matter of Hanson v. Griffiths, 204 Misc. 736, affd. 283 App. Div. 662; 4 Cooley, Taxation [4th ed.], § 1784, p. 3509). No tax may be levied by a local municipality unless specifically authorized by a State enabling act, and unless it be properly apportioned and provision made for review of the apportionment (Stuart v. Palmer, supra). If $250 per lot is legally imposed, no standard of judgment is supplied which would prevent the amount being fixed at $500 or any other sum which the Village Code might set. The article p£ the Village Law under which these park funds were extracted *90 does not contain a delegation to the village of the power to tax, nor mention such “ in lieu of ” payments at all. Section 1 of article XYI of the New York State Constitution provides that ‘‘ Any laws which delegate the taxing power shall specify the types of taxes which may be imposed thereunder and provide for their review.”
In Haugen v. Gleason (226 Ore. 99 [1961]), the court was faced with a county regulation of this' nature. Although no specific authority was contained in the State act, the county regulation purported to require the dedication of land for park purposes or money in lieu thereof.
The court held this to be a tax and beyond the authority of the county, stating at page 106: “ If ORS 92.014 permits the county to demand money from a subdivider to buy land to be used for park purposes somewhere in the vicinity of the subdivision, it equally follows that the same statute authorizes the county to demand additional money to buy and equip schools, fire stations, police stations, and to defray all or part of the expenses of each of the other objectives tabulated above. No such legislative intent can be found.”
Not only is there no standard by which to equate the flat rate of $250 a lot to the value of potential park land in the subdivision, but the Village Code provision also goes on the false assumption that the tract developer is obliged or can be compelled to transfer title to suitable park land in the subdivision (or its equivalent) to the municipality. It is clear that this is not the intention of the statute, which contemplated that park areas like the streets within a subdivision are for the benefit of lot owners therein unless the parks and streets are voluntarily transferred to the unit of government or acquired by it under the power of eminent domain. This appears from the statutory language and, likewise, from a bulletin prepared by the author of the statute which states that it remains for the municipal governing body “ alone to decide when, if ever, they become public streets and parks by the council accepting cession, accepting dedication, or beginning condemnation proceedings ”.
Such case law as exists in New York State points in the same direction, e.g., Matter of Lake Secor Development Co. v. Ruge (141 Misc. 913, affd. 235 App. Div. 627); Reggs Homes v. Dickerson (16 Misc 2d 732, affd. 8 A D 2d 640). The Supreme Court *91 of Michigan in Gordon v. Village of Wayne (370 Mich. 329) held that snhdiyiders who were wrongfully required by a village to donate property or its monetary equivalent to a village in order to obtain approval of plats were entitled to recover the amount paid. The Supreme Court of Illinois in Pioneer Trust & Sav. Bank v. Village of Mt. Prospect (22 Ill. 2d 375) held that a municipality may require a developer to provide streets which are required by the activity within the subdivision, but could not be forced to dedicate 6.7 acres of land " for the use of the Mt. Prospect Park District as an elementary school site and a secondary use as a playground.” The Mt. Prospect Planning Commission sought to impose that as a condition on the approval of a subdivision map, on the theory that this additional school and recreation facility would be required by the increase in population in that part of the village resulting from development of the subdivision. The court (pp. 378-380) cited and quoted from Rosen v. Village of Downers Grove (19 Ill. 2d 448), in which it was said that “ the developer of a subdivision may be required to assume those costs which are specifically and uniquely attributable to his activity and which would otherwise be cast upon the public ”, but added that “ because the requirement that a plat of subdivision be approved affords an appropriate point of control with respect to costs made necessary by the subdivision, it does not follow that communities may use this point of control to solve all the problems which they can foresee. The distinction between permissible and forbidden requirements is suggested in Ayres v. City Council of Los Angeles, 34 Cal. 2d 31, 207 P. 2d 1 [11 A. L. R. 2d 503], which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivision but cannot require him to provide a major thoroughfare, the need for which stems from the total activity of the community. ’ ’ The Illinois court added in the Mt. Prospect case (supra, p. 380) that, “ if the burden cast upon the subdi-vider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power.” In Kelber v. City of Upland (155 Cal. App. 2d 631), the District Court of Appeal of Cali *92 fornia Reid that an ordinance requiring a subdivider, as a condition of approval of a subdivision map, to pay $30 per lot to be placed in park and school site fund and $99.07 per acre to be placed into a subdivision drainage fund in lieu of specific drainage structures both inside and outside of the subdivision, was not a local ordinance regulating the design and improvement of a subdivision, as authorized by the statute, and that fees collected by the city thereunder were illegally imposed. The Supreme Court of Kansas held in Coronado Development Co. v. City of McPherson (189 Kan. 174) that a planning and zoning regulation requiring payment to the city by subdividers of 10% of appraised value was beyond the scope of the enabling statute. The court said: ‘ ‘ The fact that the payment is to be placed in a special fund solely for the purchase of land for public parks or playgrounds and other public areas does not add to the city’s authority under the statute. Indeed, a careful analysis of the statute compels a conclusion there is nothing in any of its provisions authorizing the assessment of money as a revenue measure for other public areas ” (p. 177; italics from original).
The order appealed from should be affirmed, with costs.
Judges Fuld, Bergan and Keating concur with Chief Judge Desmond; Judge Van VooRhis dissents and votes to affirm in an opinion in which Judges Burke and Scileppi concur.
Order of Appellate Division reversed and that of Special Term reinstated, with costs in this court and in the Appellate Division.