Argued September 23, affirmed November 26, 1971

# HAYES, *Appellant, v.* CITY OF ALBANY, *Respondent.*

490 P2d 1018

*Frank L. Whitaker,* Portland, argued the cause and filed the briefs for appellant.

*Merle A. Long,* Albany, argued the cause and filed the brief for respondent.

FORT, J.

This declaratory judgment proceeding is brought by plaintiff, a home builder, who seeks to have two ordinances of the city declared void. One is amendatory of the other, and both relate to disposal of sewage.

Following a charter amendment authorizing construction of a sewage disposal system, the city in 1967 adopted Ordinance No. 3330. This established classes of sewer users and, by Section 3, provided monthly charges varying with the uses set forth therein. Section 4 required payment of a sewer connection charge whenever properties were hooked up to the sewer system. It also created use classifications for that purpose and specified a different connection charge for each such classification.

All funds collected under both Section 3 and Section 4 were paid into a separate fund denominated a Sewer Service Fund.

In 1970, Section 4 was amended by Ordinance No. 3472. This comprehensive amendment rewrote the former section. One part provided:

"*Section 4:* (b) CONNECTION CHARGES.

"To establish appropriate provisions for the construction and expansion of the sanitary sewer system of the city, inclusive of the treatment plant, and to provide for the necessary oversizing of the sanitary sewer system, and to be assured that the cost of such construction and expansion is borne by those who receive the benefits thereof, there is hereby established connection charges for all connections made to the sanitary sewer system of the city in accordance with the following amounts:

"* * * * *"

A specific series of classifications followed and the amount to be charged established for each. These amounts represented a large increase over the former Section 4. For example, the charge for a single family dwelling was increased from $25 to $255. It is this change toward which plaintiff's attack is chiefly directed. A complicated formula for industrial use involving measurement and evaluation of waste discharge was also provided under which a new major industrial user of the city's disposal system, such as a frozen food processor, might be required to pay a connection charge amounting to as much as $400,000. Prior to the amendment the maximum charge was $200.

The schedule of connection charges also provided for an annual percentage reduction to be applied uniformly for all nonindustrial categories based on the ratio of existing total use in terms of millions of gallons per day passing through the disposal plant in relation to its maximum rated capacity of 8,700,000 gallons per day, and for the first year set that percentage at 60.9 per cent. This was the percentage of

the rated capacity which was found by the council to be actually utilized during 1970. The ordinance provided for an annual recomputation of that percentage until the capacity of the sewage disposal plant was reached. At that time and thereafter the user would pay the maximum amount provided.

■■ Plaintiff attacks the validity of the increased sewer connection charge provided by Ordinance No. 3472 on the ground that it is a tax, and also even though it be considered to be a "user charge" rather than a tax it is void because it is not "just and equitable" as required by ORS 224.220.

He bases his contention that it is a tax on the ground that the ordinance is a revenue measure, rather than a proper exercise of the police power. He relies on *Haugen v. Gleason,* 226 Or 99, 359 P2d 108 (1961). In that case a county planning commission sought to charge subdividers a per lot fee of $37.50. The funds collected were to be used by the county or the school district for land acquisition.

In holding that ORS 92.044 did not authorize the regulation adopted by the county planning commission, the court said:

"In form, Regulation 4.10 speaks in regulatory language, and requires the dedications of land and payment of money 'in accordance with standards adopted by the Planning Commission.'

"The next sentence, however, reads:

" '* * * Such money shall be used for land acquisition and may be given either to the County or the School District of the area, as specified by the Planning Commission.'

The above-quoted language has only one meaning: the collection of money from subdividers is for the

purpose of acquiring land. Since the ordinance contains nothing to relate the money, or its expenditure, to the land being subdivided, the result is that the money will become part of the public funds of the county or the school district as the case may be.

"Every presumption of legislative validity must be granted. *Wright v. Blue Mt. Hospital Dist.*, 214 Or 141, 144, 328 P2d 314. But Regulation 4.10 authorizes the county to lay a tax upon one class of landowners for a public purpose which may be, but need not be, related to the activity being regulated. The regulation cannot stand because it fails to limit the use of money so produced to the direct benefit of the regulated subdivision." 226 Or at 104-05.

Here, however, the challenged ordinance expressly provides:

"[Section 4(c) (4):] All monies received from the Sewer Connection Charges plus interest, if any, shall be deposited in the Sanitary Sewer Capital Reserve Fund * * * and shall be expended from that fund only for the purpose of making major emergency repairs, extending or oversizing, separating, or constructing new additions to the treatment plant or collection and interceptor systems."

Thus it is apparent that the funds derived from the challenged sewer connection charge can be used only in furtherance of the specified purposes and cannot be diverted to general public uses. Here, unlike *Haugen*, all funds received under Ordinance No. 3472 must be used for a purpose directly "related to the activity being regulated."

Plaintiff also relies on *Daniels v. Point Pleasant*, 23 NJ 357, 129 A2d 265 (1957), and *Weber Basin Home Builders Ass'n v. Roy City*, 26 Utah 2d 215, 487 P2d 866 (1971).

Both *Daniels* and *Weber* dealt with efforts by the city government to raise funds for general municipal

purposes by vast increases in the fees charged for building permits wholly unrelated to the costs involved in the regulation or inspection of buildings.

In *Daniels* the court said:

"* * * Admittedly, the purpose of the ordinance was to raise revenue to defray the increased cost of school and other government services. * * *" 23 NJ at 362,

and in *Weber* the court pointed out:

"* * * [T]he declared purpose was to raise general revenue for the City * * *." 487 P2d at 866.

In both, the funds derived went into the general fund of the municipality and thus might be used for purposes wholly unrelated to the purpose of the charge. We have already pointed out that under the challenged ordinance this not only could not happen but the proceeds from both the connection charge and the sewer user fee must be used directly in the development and maintenance of the sewage disposal system, which is the regulated activity.

In *Associated Homebuilders v. City of Livermore*, 56 Cal 2d 847, 17 Cal Rptr 5, 366 P2d 448 (1961), the California Supreme Court held that a municipality which was authorized to collect fees for services and facilities furnished by it in connection with sanitation or sewage systems had power to levy sewer connection charges to be paid into a special sanitation fund. The ordinance made advance payment thereof a prerequisite to issuance of a building permit.

The court said:

"* * * The subject ordinances declare that their purpose is 'To establish appropriate pro-

visions for the construction and expansion of the sanitary sewer system of the City of Livermore, . . .' The charges which they impose to achieve this end are denominated 'Connection Charges For The Privilege of Connecting To' defendant's sewer system. As noted above, the funds thus raised are dedicated to 'expanding the sanitary sewer system' of defendant city and 'the servicing of any bonded indebtedness' of defendant incurred for sewer purposes. Such charges fall within the stated scope of section 5471 and are authorized by it as 'fees . . . or other charges for services and facilities furnished by [defendant city] . . . in connection with its sanitation or sewerage systems; . . .' In any given case the charge prescribed by the subject ordinances is measured by the use to which the property (and consequently the city's sewer system) will be put, including the number and type of plumbing fixtures to be installed. Accordingly, it does not constitute an assessment on the value of the property, such as we considered in *City of Los Angeles v. Offner* (1961) 55 Cal.2d 103 [10 Cal. Rptr. 470, 358 P.2d 926], but rather is in the nature of an excise tax imposed on all persons thereafter applying for building permits for the privilege of connection to (and is reasonably commensurate with the burden to be imposed on) the facilities of defendant's sewer system." 56 Cal 2d at 852-53.

No claim is made nor evidence offered by plaintiff that the amounts required to be paid as a connection charge were not reasonably related to the costs fairly to be anticipated in the future construction and expansion of the sanitary sewage disposal system of the city as set forth in Section 4 (b) of the ordinance.

In *Aloha Sanitary Dist. v. Wilkens*, 245 Or 40, 420 P2d 74 (1966), a case not cited in the briefs, an ordinance adopted pursuant to ORS 450.005, et seq., by Aloha Sanitary District levying assessments for

future construction costs was attacked. The court in upholding the ordinance pointed out:

"Under any system of financing, the property owners cannot be certain that the cost of construction will be exactly the amount initially estimated by the district, even where the assessment is preceded by a contract fixing the cost of construction. Unforeseen contingencies may increase the ultimate cost of construction. The fact that ORS 450.140 (4) provides for the making of 'supplementary assessments' and 'rebates' makes it clear that the legislature contemplated variations between proposed and actual costs. * * * Admittedly, under this type of procedure the possibility of variation between estimated and actual costs is greater than where the assessment follows construction. It is, however, the leeway permitted to cities in financing their projects and it is reasonable to assume that the legislature intended to give sanitary districts the same power." 245 Or at 43-44.

In so holding, the court considered its contrary prior decision in *City of Stanfield v. Burnett,* and held:

"*City of Stanfield v. Burnett,* 222 Or 427, 434, 353 P2d 242 (1960), contains the statement that 'any attempted assessment prior to construction and determination of total cost is a nullity.' To the extent that *City of Stanfield v. Burnett,* supra, can be regarded as so holding, it must be overruled." 245 Or at 45-46.

In *Stanfield,* the court, in upholding the authority of the city to charge and collect a monthly sewer user fee, also said:

"* * * [A] charge for the use of a sewer is not a tax or assessment but a charge for a service rendered and is based upon contract. * * *" 222 Or at 435.

The court then cited in support of its conclusion

Opinion of the Justices, 93 NH 478, 39 A2d 765 (1944).
In *Opinion* the court said:

"'* * * Another form of a charge which is in substance a contract is to be found where a municipality, under authority conferred by statute, imposes a charge upon property owners who connect their land with a sewer system constructed by the city, the owner being free to avoid liability by refraining from making such connection. Such charge may be a fixed sum for the privilege of making the connection, or it may be a charge based upon the amount of sewage discharged from the premises into the sewer. Such a charge is not ordinarily regarded as a local assessment.' Page & Jones, Taxation by Assessment, § 6." 93 NH at 481.

Thus whether viewed as an excise tax as described in *Associated Homebuilders,* or as a contract between the user and the city as described in *Stanfield* and *Opinion of the Justices,* we conclude that the city had the power to levy a sewer connection charge reasonably commensurate to meet the burden currently imposed or reasonably to be anticipated upon the city's sewage disposal system, and that Ordinance 3472 was a valid exercise of that power.

The judgment is affirmed.