Argued and submitted April 13, affirmed May 20, reconsideration denied July 29, petition for review allowed October 27, 1992 (314 Or 573)

John T. DOLAN
and Florence Dolan,
*Petitioners,*

*v.*

CITY OF TIGARD,
*Respondent.*

(LUBA 91-161; CA A73769)

832 P2d 853

David B. Smith, Tigard, argued the cause and filed the brief for petitioners.

James M. Coleman, Portland, argued the cause for respondent. With him on the brief was O'Donnell, Ramis, Crew & Corrigan, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners applied to the City of Tigard for a permit to tear down the existing retail building on their property, to construct a larger one and to intensify the commercial use of the property. The city granted the application, subject to the conditions specified in applicable zoning ordinance provisions that petitioners dedicate part of the property for a pedestrian and bicycle pathway and for greenway and storm water drainage purposes. Subsequently, petitioners sought a variance from the provisions prescribing the conditions, which the city denied. Petitioners appealed to LUBA, contending that the dedication requirements constitute uncompensated takings of the property in violation of Article I, section 18, of the Oregon Constitution and the Fifth Amendment to the federal constitution, made applicable to the city by the Fourteenth Amendment. LUBA rejected the contentions and affirmed the city's decision. Petitioners seek review, and we affirm.

■    In *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987), the Supreme Court developed what appears to be a three-level inquiry for determining when a condition on development constitutes a taking. The first question is whether there is a legitimate governmental interest that the regulation that establishes the conditions is designed to serve. The second is whether the regulation and the condition "substantially advance" that interest. *See Agins v. Tiburon*, 447 US 255, 100 S Ct 2138, 65 L Ed 2d 106 (1980). In *Dept. of Trans. v. Lundberg*, 312 Or 568, 576-77, 825 P2d 641 (1992), the Oregon Supreme Court explained the second part of the *Nollan* inquiry:

> "The Supreme Court of the United States held that this type of condition amounts to an unconstitutional taking unless there is an 'essential nexus' between the land use regulation that the permit condition is intended to implement and the permit condition. The Court described this requirement:
>
>> " '[A] permit condition that serves the same legitimate [governmental] purpose as a refusal to issue the permit should not be found to be a taking if the refusal to issue the permit would not constitute a taking. * * *
>>
>> " 'The evident constitutional propriety disappears, however, if the condition substituted for the prohibition

utterly fails to further the end advanced as the justification for the prohibition. * * * In short, unless the permit condition serves the same governmental purpose as the development ban, the building restriction is not a valid regulation of land use but "an out-and-out plan of extortion." '

"*Nollan v. California Coastal Comm'n, supra*, 483 US at 836-37 (citing authority). The Court concluded that the permit condition did not serve any of the purposes relied on to justify its imposition. The lack of nexus between the permit condition and the purpose of the building restriction converted that purpose to 'the obtaining of an easement to serve some valid governmental purpose, but without payment of compensation[,]' *i.e.*, to an unconstitutional taking. *Id*. at 837." (Brackets in original.)

The third inquiry is concerned with the application of the conditions to particular developments and poses the question of what relationship must exist between the impacts or public needs that result from a development and the conditions that may be attached to its approval to ameliorate or respond to those impacts and needs. (In land use parlance, this is sometimes called the relationship between "impacts" and "exactions.") The Court said in *Nollan*:

"The Commission claims * * * that we may sustain the condition at issue here by finding that *it is reasonably related to the public need or burden that the Nollans' new house creates or to which it contributes. We can accept, for purposes of discussion, the Commission's proposed test* as to how close a 'fit' between the condition and the burden is required, because we find that this case [*sic*] does not meet even the most untailored standards." 483 US at 838. (Emphasis supplied.)

The Court proceeded to hold that requiring the Nollans to grant a public beach access easement did not have the necessary relationship to the construction of the house for which they sought a permit. Stripped to its essentials, the Court's reasoning is that the house would not interfere with access in the way that the Commission thought and, therefore, the easement could not be required to promote access, at least without payment of compensation to the Nollans.

Although petitioners' brief in this court differs significantly from the argument that they made to LUBA, the

principal issues here, as there, are what the proper test is for ascertaining whether a condition survives constitutional scrutiny under the third question in *Nollan* and whether the conditions here pass that test. The city argues, and LUBA concluded, that the "reasonable relationship" test is the correct one under both constitutions. LUBA explained the substance of that test:

"The 'reasonable relationship' standard is somewhere between the more extreme standards followed by courts in a few jurisdictions which require that the need for a development exaction be 'specifically and uniquely attributable' to the proposed development, or that a development exaction merely have 'some relationship' to the proposed development. *Parks v. Watson*, [716 F2d 646 (9th Cir 1983)]."

Petitioners do not appear to dispute that that is the correct conclusion under the Oregon Constitution, and we agree with LUBA's conclusion and its analysis of the Article I, section 18, issue. *See Hayes v. City of Albany*, 7 Or App 277, 490 P2d 1018 (1971); *O'Keefe v. City of West Linn*, 14 Or LUBA 284 (1986). The reasonable relationship test has also been adopted as the correct standard under the Fifth Amendment by most courts that have addressed the question. It was endorsed by the Ninth Circuit in *Parks v. Watson, supra*, and that court in effect held in *Commercial Builders v. Sacramento*, 941 F2d 872 (9th Cir 1991), that *Nollan* did nothing to change or modify the applicable test. *See* note 1, *infra*.

Petitioners argue that *Commercial Builders* is incorrect and that *Nollan* demands a more stringent Fifth Amendment standard. They maintain that *Nollan* requires a "substantial relationship" or "essential nexus" between developmental impacts and conditions if the conditions are not to constitute takings. It is unclear how petitioners think that the various tests might differ in practice. It is clear, however, that they misread *Nollan*. The language to which they trace the putatively heightened test appears in the Court's reiteration that the regulation must substantially advance the legitimate state interest that it is meant to serve and in its explanation that a condition that is substituted for a prohibition must further the end that justifies the prohibition. 483 US at 834, 837; *see Agins v. Tiburon, supra*. In other words, that language relates to the second of *Nollan's* questions, but the third question is the one presented here. The

language in *Nollan* that is most in point, and is quoted above, assumes *arguendo* the correctness of the reasonable relationship standard for determining the permissibility of imposing conditions responsive to the impacts of particular developments. In the light of the Ninth Circuit's and LUBA's well-reasoned espousals of the reasonable relationship standard, and in the absence of anything approaching a rejection of it in *Nollan*, we conclude that it is the proper test under the Fifth Amendment as well as under Article I, section 18.[1]

■ The city stated in findings that petitioners do not challenge:

"[T]he dedication and pathway construction are reasonably related to the applicant's request to intensify the development of this site with a general retail sales use, at first, and other uses to be added later. It is reasonable to assume that customers and employees of the future uses of this site could utilize a pedestrian/bicycle pathway adjacent to this development for their transportation and recreation needs. * * * In addition, the proposed expanded use of this site is anticipated to generate additional vehicular traffic thereby increasing congestion on nearby collector and arterial streets. Creation of a convenient, safe pedestrian/bicycle pathway system as an alternative means of transportation could offset some of the traffic demand on these nearby streets and lessen the increase in traffic congestion.

"[T]he required [greenway and storm water drainage] dedication [is] reasonably related to the applicant's request to intensify the usage of this site, thereby increasing the site's impervious area. The increased impervious surface would be expected to increase the amount of storm water runoff from the site to Fanno Creek. The Fanno Creek drainage basin has experienced rapid urbanization over the past 30 years causing a significant increase in stream flows after periods of precipitation. The anticipated increased storm water flow from the subject property to an already strained creek and drainage basin can only add to the public need to manage the stream channel and floodplain for drainage purposes. Because the proposed development's storm drainage would add to the need for public management of the Fanno Creek

---

[1] Aside from the test that petitioners argue was adopted in *Nollan*, and which we have held was not adopted there, the United States Supreme Court has not adopted the reasonable relationship test or any other, so far as we, LUBA or the parties know.

floodplain, * * * the requirement of dedication of the floodplain area on the site is related to the applicant's plan to intensify development of the site."

LUBA concluded, and we agree, that those findings demonstrate a direct and reasonable relationship between the conditions that the city attached to its approval of the intensified use and the impacts and public needs to which the use will give rise. In addition to the fact that the conditions are part of a general and comprehensive regulatory scheme, the findings demonstrate that the increased water runoff from the intensified development will create conditions to which the greenway/storm water drainage requirement is responsive. Similarly, the pedestrian and bicycle pathway condition is reasonably calculated to alleviate the increased traffic problems and accommodate the increased need and demand for non-vehicular access to the area that will result from the intensified operations. The conditions satisfy the reasonable relationship standard. *See Dept. of Trans. v. Lundberg, supra.*

Petitioners also argue that the deprivation of their possession and use of the dedicated part of their property is a *"per se* taking" that violates both constitutions, even if it survives the constitutional standards for the imposition of conditions on development approvals. The argument is circular. If the standards articulated for the imposition of conditions in *Nollan* and other apposite authorities are satisfied, there is, *per se*, no unconstitutional taking, because the only way in which petitioners do or can assert that the city took their property was by imposing the conditions.

Petitioners attempt to extricate themselves from that truism by contending that the "invasion" of their property affects the parcel as a whole, even though the dedication requirement applies to far less than the whole. They also argue that the conditions deny them all economically viable use of their land. Both assertions are untenable.

Affirmed.