Argued September 10, affirmed September 30, 1953

BEESON ET AL. *v.* HEGSTAD ET AL.

261 P. 2d 381

*F. J. Kucera,* of Portland, argued the cause and filed a brief for appellants.

*William A. Martin* argued the cause for respondents. On the brief were *Davis, Jensen & Martin,* of Portland.

TOOZE, J.

This is an action in replevin to recover possession of two 1949 Chevrolet motor trucks, brought by Ray E. Beeson and Minerva Beeson, copartners, dba Beeson Chevrolet, as plaintiffs, against Vernon K. Hegstad, an individual, dba Vernon Hegstad Auto Sales, and Al Siemensen, as defendants. The jury returned a verdict in favor of defendants, and judgment was entered accordingly. Upon motion of plaintiffs for a judgment in their favor notwithstanding the verdict, the verdict and judgment in favor of defendants were set aside, and judgment was entered for plaintiffs. Defendants appeal.

Briefly, the essential facts are: For a period of months immediately prior to January, 1949, one R. A. Bonner was employed by defendant Hegstad as an agent to purchase motor vehicles. Bonner ceased to

represent Hegstad in December, 1948, and at that time was indebted to Hegstad in the amount of $5,600 for and on account of monies advanced to him. On January 10, 1949, Bonner was employed by plaintiffs as their agent to sell motor vehicles. The contract of employment was in writing, and the authority given the agent was confined to sales by him of his principals' property. In his capacity as agent of plaintiffs, Bonner obtained a written order from Rushlight's, Inc., under date of January 11, 1949, for 72 Chevrolet motor trucks. Bonner represented to his principals that in order to obtain the Rushlight order, it was necessary that the purchaser be given a discount by way of two new Chevrolet automobiles. To carry out this arrangement, plaintiffs under date of January 12, 1949, executed and delivered to their agent Bonner the following writing:

"We agree to deliver to Mr. R. A. Bonner, two, new 1949 Chevrolet passenger cars, Models to be selected, as soon after Chevrolet Motor Company, releases new models, and are in production. Delivery to be made sometime in month of February.

"Payment for which is hereby acknowledged in full.

"Beeson Chevrolet
by [Sgd.] L. E. Beeson Mgr."

On or about January 17, 1949, Bonner agreed with Hegstad that he would deliver the two new 1949 Chevrolet passenger cars to Hegstad (not to Rushlight's, Inc., as represented to plaintiffs) in consideration of a credit of $4,500 on the debt he owed him. The balance of the amount owing Hegstad was paid by check of Bonner, drawn on his own funds. To evidence this transaction, Bonner executed and delivered to Vern's Auto Sales (one of the assumed names

under which Hegstad transacted business) under date of January 17, 1949, the following writing:

"This is to certify that I Richard A. Bonner of 2405 S. E. Umatilla do this day sell & transfer over two (2) 1949 Chev automobiles to Vern's Auto Sales for the sum of forty five hundred ($4500.00) cash paid this 1-17-49. Delivery to be made for sure during month of February 1949.

"Signed
Richard A. Bonner
"Witness [Sgd.] George D. Droppo."

Bonner did not deliver two new Chevrolet automobiles to Hegstad in February, 1949, as promised, nor did he or plaintiffs ever deliver them. Thereafter and upon many occasions, Hegstad inquired of Bonner when delivery could be expected. Bonner delayed any action by Hegstad until July, 1949. At that time Hegstad insisted that Bonner secure him for the two automobiles or give him some security for the $4,500. Through representations to his principals that certificates of title were necessary in connection with the sales of motor trucks to other parties, Bonner secured from plaintiffs applications for title to be delivered to the alleged purchasers. Two of these applications were used to obtain certificates of title upon the two motor trucks involved in this litigation. Bonner delivered these applications to Hegstad, and certificates of title were issued for them at the direction and for the benefit of Hegstad in the name of defendant Al Siemensen. Under these circumstances and while the trucks were parked at the home of Bonner, defendants took possession of them. On August 11, 1949, and when plaintiffs learned the whereabouts of the trucks, they demanded possession thereof from defendants, which was refused. This action was then commenced.

Upon the trial it was admitted that plaintiffs were the owners of the trucks. Defendant Hegstad claimed that they had been pledged and delivered to him as security for the delivery of the two new 1949 Chevrolet automobiles or the payment of $4,500, and that inasmuch as the automobiles had not been delivered nor the $4,500 paid, he was entitled to retain possession.

At no time prior to August 10 or 11, 1949, did Hegstad have any dealings or conversations directly with plaintiffs respecting any of the matters herein mentioned, nor did plaintiffs know of the transactions between Bonner and Hegstad herein referred to.

In sustaining the motion for judgment notwithstanding the verdict and entering judgment in favor of plaintiffs, the able trial judge ruled that there was no substantial evidence in the record of any debt or obligation owing from plaintiffs to defendants, nor was there any evidence whatsoever of any authority, real or apparent, on the part of Bonner to pledge the personal property of plaintiffs as security.

Assuming, without deciding, that the delivery to Bonner by plaintiffs of the writing first above set forth at length, clothed Bonner with the apparent ownership of two new automobiles later to be selected and delivered, and upon which Hegstad might rely, and barred plaintiffs from claiming otherwise, and that on account thereof an obligation on the part of plaintiffs arose to deliver two new automobiles to Hegstad as promised by Bonner, we approach the decisive question in this case.

Under his authority as an agent of plaintiffs to sell motor vehicles, did Bonner have the implied or

apparent authority to pledge the property of plaintiffs as security for his own debt or as security for a debt or obligation of plaintiffs?

■ It is elementary that express authority given an agent to do certain things carries with it the implied authority to do all other things reasonably incident to and necessary for carrying out the objectives of the agency.

■ It also is axiomatic that one dealing with an agent cannot hold a principal liable for any act of the agent that does not come within the scope of his real or apparent authority. By apparent authority is meant such authority as by his acts and conduct the principal holds out his agent as possessing: *Perry v. Thomas,* 197 Or 374, 253 P2d 299, 305; 2 Am Jur 82, Agency, § 101.

■ As noted, Bonner was employed as a salesman of motor vehicles. An agent authorized to sell is not thereby impliedly given the right or power to pledge the property, goods, or securities of his principal as an incident to his express authority. In 2 Am Jur 98, Agency, § 119, the following rules are stated:

> "It is a firmly established doctrine that power conferred upon an agent to sell personal property in his possession does not carry with it an implied power or authority to barter or exchange it for other property, and any attempt on the part of the agent to make such a disposition thereof, in the absence of a ratification by the principal, will be void as to the latter, and title thereto will not pass. Nor has an agent, authorized merely to sell, authority to trade the property for other property and money to boot.
>
> *"It is also accepted that an agent is not authorized to pledge the property, goods, or securities*

*of his principal merely because he is authorized to sell them.*

"An agent authorized merely to sell has no implied authority to give an option to purchase." (Italics ours.)

■ There is no evidence in the record upon which a finding could be based that plaintiffs clothed Bonner with either express, implied, or apparent authority to pledge the trucks to defendants.

The judgment is affirmed.