Argued September 8, affirmed November 16, 1966

# ALOHA SANITARY DISTRICT *v.*
## WILKENS ET AL
### 420 P. 2d 74

*Darrel L. Johnson,* Portland, argued the cause for appellants. With him on the briefs were Pendergrass, Spackman, Bullivant and Wright; Charles E. Wright, and Hugh K. Cole, Jr., Portland.

*Carrell F. Bradley,* Hillsboro, argued the cause for respondent. With him on the brief were Schwenn and Bradley, Hillsboro.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

O'CONNELL, J.

This is a proceeding brought by the Aloha Sanitary District under the authority of ORS 33.710 and 33.720 to obtain a judicial declaration as to the legality of an ordinance enacted by the district. Defendants appeal from a decree declaring the ordinance valid.

The ordinance in question provides for the levy of a special assessment against property to be benefited

by a sewer project. The validity of the ordinance is attacked by defendants on the ground that it purports to assess their property and require payment of tax assessments prior to construction, the assessment being based upon the estimated cost of the improvement.

Defendants contend that an ordinance providing for pre-assessment and prepayment is valid only if it is specifically authorized by statute. There is no statute in Oregon specifically authorizing sanitary districts to make assessments prior to the completion of improvements.

■ It is our opinion that statutory authorization for pre-assessment can reasonably be implied from the grant to the district of the powers contained in ORS 450.005 et seq. ORS 450.140 authorizes sanitary districts to "adopt a general ordinance providing for the method of assessment," which ordinance is to "provide for the general method of assessing the property directly benefited and of the recording of liens against the property directly benefited, and of making supplementary assessments and rebates."

ORS 450.075 provides that the district may "do any act necessary or proper to the complete exercise and effect of any of its powers or for the purposes for which it was formed."

■ In some circumstances assessment and payment prior to construction may be necessary to finance sanitary district projects. This would generally be the case if the district finds it impossible to finance a project through the sale of bonds or general obligation improvement warrants. Even in the absence of a showing of necessity, however, the statutes should be construed to empower the district to finance needed projects by pre-assessment and prepayment, if other

methods of financing present a substantial obstacle to the commencement of needed improvements.

Defendants argue that sanitary districts have only the limited power of a "quasi"-municipal corporation as distinguished from a "pure" municipal corporation. This is a purely verbal and abstract distinction which affords no aid in interpreting ORS 450.005 et seq. unless it is also shown that because of the differences between sanitary districts and cities there was reason for the legislature to impose upon the former category stricter requirements in financing improvements.

Defendants offer no convincing reason for the postponement of assessment and payment until construction is complete. They argue that under this procedure the residents of the district are required to pay approximately $2,500,000 within a period of two months "for a project that might be built in the future, for an uncertain amount, and to be finished at an indefinite time." This, it is said, forces the property owners to "buy a pig in a poke."

■ Under any system of financing, the property owners cannot be certain that the cost of construction will be exactly the amount initially estimated by the district, even where the assessment is preceded by a contract fixing the cost of construction. Unforeseen contingencies may increase the ultimate cost of construction. The fact that ORS 450.140 (4) provides for the making of "supplementary assessments" and "rebates" makes it clear that the legislature contemplated variations between proposed and actual costs. In the case at bar the property owners in the district knew the estimated cost of the project at the time they voted to approve it. The estimate was based upon the plans and specifications prepared by professional engineers

as required by ORS 450.165. The property owners had notice of the proposed improvement and the estimate of the assessment. They were given the opportunity to be present at a hearing and to object to the improvement and assessment. The amount of the assessment and lien imposed by the ordinance now in question was the same as the engineers' estimate and the same as that set forth in the notice of hearing previously mentioned. Admittedly, under this type of procedure the possibility of variation between estimated and actual costs is greater than where the assessment follows construction. It is, however, the leeway permitted to cities in financing their projects and it is reasonable to assume that the legislature intended to give sanitary districts the same power.

In the present case, if plaintiff district could have obtained purchasers for its warrants, the financing procedure clearly would have been free from attack, yet the defendants would be no better informed than they now are with respect to the ultimate cost of the project. We hold that plaintiff has the power to assess and require payment for improvements before construction is commenced.

■ The next question presented to us is the applicability of the Bancroft Bonding Act.[①] Defendants argue that application for and sale of Bancroft bonds can be made only after the construction of an improvement is completed. There is no express provision in the Bancroft Bonding Act which places this limitation on the application for and sale of Bancroft bonds. If, as we have held, a sewer district has the power to make an assessment and require payment prior to the

---

[①] ORS 223.205 et seq. ORS 450.155 makes the Bancroft Bonding Act applicable in the financing of sanitation district improvements.

completion of a project, there would seem to be no reason for denying the property owner an apportunity of paying his assessment in installments. As we have pointed out, under ORS 223.387 et seq. cities are authorized to make assessments prior to construction. If defendants' interpretation of the Bancroft Bonding Act were accepted, persons upon whom a city assessment was imposed prior to construction would be required to pay their assessment in one lump sum, whereas those who were assessed after construction would have the opportunity to pay in installments. We can think of no reason which would prompt the legislature to make such a distinction and there is no more reason for making the distinction where the pre-assessment is made by a sewer district as in the present case. We hold that the Bancroft Bonding Act is applicable in bonding the improvement assessments in the present case.

■ Defendants contend that notice and hearing should have been given of the proposed method of pre-assessment and prepayment. There is no statutory provision requiring notice and hearing by which property owners are given the opportunity to protest the method of financing proposed by the district. The statutes expressly require the district to give notice of its intention to make the assessment and improvement and to give property owners the opportunity to remonstrate against the assessment.[9] It would seem that provision also would have been made for notice of the method of financing if the legislature had deemed it necessary for the protection of the property owners' interest.

*City of Stanfield v. Burnett,* 222 Or 427, 434, 353 P2d 242 (1960), contains the statement that "any at-

[9] ORS 450.140.

tempted assessment prior to construction and determination of total cost is a nullity." To the extent that *City of Stanfield v. Burnett,* supra, can be regarded as so holding, it must be overruled.

The decree of the trial court is affirmed.