Argued and submitted April 7, 1982, reversed and remanded October 4, 1983

# WIGGINS et ux,
*Petitioners on Review,*

*v.*

# BARRETT & ASSOCIATES, INC. et al,
*Respondents on Review.*

## (No. 37187, CA 16909, SC 28128)

669 P2d 1132

680

James M. Gillis, Newport, argued the cause for petitioners on review. With him on the briefs was Litchfield, Macpherson, Carstens & Gillis.

Clifford G. Collard, Toledo, argued the cause for respondent on review Barrett & Associates, Inc. With him on the brief was Paul B. Osterlund.

Richard D. Beeson, Newport, argued the cause for respondent on review Gleneden Sanitary District. With him on the brief was Minor, Yeck & Beeson.

LENT, J.

Linde, J., filed a specially concurring opinion.

**LENT, J.**

Statement of the legal issues will be more understandable if made in light of the record and facts rather than if made abstractly.

■ As presented to this court, plaintiffs' claim is for damages for breach of contract. Defendants are a sanitary district (District) and a corporation (Barrett). As did the Court of Appeals, we treat the case as if it were before us on plaintiffs' claim of error arising from directed verdicts in favor of the respective defendants. In that posture we view the evidence in the light most favorable to the plaintiffs. *Paulson v. Western Life Insurance Co.,* 292 Or 38, 40, 636 P2d 935, 936 (1981). There is evidence to establish the following facts.

**Facts**

District wrote to plaintiff property owners requesting an easement across their land for a sewer line. The letter offered a free connection to the line if plaintiffs would convey promptly. Plaintiffs wanted the sewer line to be so constructed that they could have a gravity flow connection rather than a more expensive and troublesome pumping system for connection. To inform the District of that and to ascertain the proposed depth of the line, plaintiffs called a telephone number given on the letter for inquiries and reached the District's secretary. The secretary instructed them to contact Barrett, the project engineering firm, concerning any technical questions. Plaintiffs did so and were directed to one Gage, Barrett's local field representative, "their man down on the job."

Plaintiffs met with Gage and informed him that they would voluntarily convey an easement to the District only if the District would provide plaintiffs with a gravity flow connection. Gage made some preliminary measurements and promised plaintiffs that they would get a gravity flow connection. Because of that promise and because the District's offer to provide a free connection had an imminent deadline for acceptance, plaintiffs executed and delivered to the District a conveyance of the easement.

Several months later, the plaintiffs discovered that the sewer line was not constructed at such a depth as to permit a gravity flow connection. They brought the matter to the

attention of both Gage and the District, but neither would offer any relief.

Plaintiffs then filed this cause and seek damages for breach of contract in the amount necessary to install, operate and maintain a pumping system for connection to the sewer.

## Trial Court

The trial court's orders of directed verdicts were based upon Oregon's version of the Statute of Frauds, ORS 41.580, which, in pertinent part, provides:

> "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:
>
> "* * * * *
>
> "(5) An agreement * * * for the sale of real property, or of any interest therein.
>
> "(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing."

Specifically, the trial court relied upon subsection (6), refusing to allow the jury to consider evidence of Gage's promise because the trial court found no evidence that Gage had the written authority.

## Court of Appeals

Plaintiffs appealed from the resulting judgments in favor of the respective defendants. Defendants argued that they were entitled to affirmance on the basis of both subsections of ORS 41.580. The Court of Appeals held that subsection (5) was not applicable because the grantors had fully performed. That court affirmed, however, on the basis that subsection (6) barred plaintiffs' claims despite the fact of their complete performance. In light of that decision, the Court of Appeals did not deal with Barrett's contention that it and Gage were acting for a disclosed principal and, therefore, could not be liable for breach of contract, if any. *Wiggins v. Barrett & Associates,* 53 Or App 882, 884, 632 P2d 1373 (1981).

## Issues

Three main issues are presented.

(1) Does ORS 41.580 bar the grantors of an easement conveyed pursuant to an oral contract from proving the oral promise made by the grantee's agent to induce the grantors' promise to convey and their performance thereof where the agent had no written authority to make the promise? We hold that the grantors' performance takes the contract out of the statute.

(2) Can a municipality be bound by the promise of its agent acting beyond the scope of his actual authority? We hold that the municipality may be bound if (a) the municipality clothes the agent with apparent authority, (b) the promise is one which the municipality could lawfully make and perform, (c) there is no statute, charter, ordinance, administrative rule, or public record that puts the agent's act beyond his authority, (d) the person asserting the authority has no reason to know of the want of actual authority, and (e) the municipality has accepted and retained the benefit received by the municipality in return for the promise.

(3) Can a breach of contract action be maintained against an agent where the agent at all times disclosed the fact that the agent was bargaining for the contract upon behalf of a disclosed principal? We hold that the agent cannot be held liable for the principal's breach of the contract.

## Statute of Frauds

In their brief in the Court of Appeals the plaintiffs argued that the Statute of Frauds did not bar their claim because the contract they sought to enforce was not one for the sale of an interest in real property within ORS 41.580(6). Rather, they argued, the contract they sought to enforce was severable and was simply a contract to provide services, namely, a certain type of sewer service. We do not know what further contention the plaintiffs made during oral argument in the Court of Appeals, but that court, in its opinion, referred to plaintiffs' "additional contention" that their full "execution" of their agreement should take the agreement out of the statute. In their petition to this court to review the decision of the Court of Appeals, plaintiffs specifically rely upon both propositions.

*Severability*

Although plaintiffs cited several decisions of this court in their brief in the Court of Appeals in support of this contention, our examination of those cases discloses that they do not support the rule for which plaintiffs contend. In their petition for review, plaintiffs argue another case, not cited to the Court of Appeals. They emphasized their reliance upon that case in oral argument to this court. They cite *Caldwell v. Wells,* 228 Or 389, 365 P2d 505 (1961). In that case a majority of the court found there was evidence to support the trial court's findings that defendant and plaintiffs negotiated for the sale of defendant's improved real property. As part of the negotiations, defendant promised to install a well that would produce water suitable for domestic use. The written contract for the sale and purchase of the property was silent as to the well. Pursuant to the contract, defendant conveyed the property to plaintiffs, and they took possession. The well did not produce water suitable for domestic use. Plaintiffs claimed for breach of contract, and defendant asserted that the promise, if any, concerning the well was not enforceable, inter alia, by reason of the Statute of Frauds. This court held that the agreement concerning the well was not an agreement involving the transfer of real property but was only an agreement for defendant's services.

We do not perceive *Caldwell* to be in point. There, this court severed two promises made by one party. One of those promises was clearly within the statute but was not the promise sought to be enforced. The other promise was for services only and the use of the land was merely incidental to the transfer of interest in realty. Here, there is a single promise on the part of each contracting party, the promise of one being the consideration for the promise of the other. Severance of the mutual promises would destroy the contract.

Severability is not the point of departure for analysis.

*Full Performance*

The Court of Appeals held that the full performance by the plaintiffs of their promise to convey an easement took the contract out of ORS 41.580(5) on the basis of this court's decision in *Malzer v. Schisler,* 67 Or 356, 136 P 14 (1913). In that case the seller agreed to convey property to a third person

in consideration of defendant's promise to pay seller a sum of money. The seller conveyed and when the defendant did not pay the full sum promised brought action for the balance. Defendant raised the Statute of Frauds, and this court held that the case was governed by the rule that the performance by the seller under an oral contract of sale of real property takes the contract out of the statute. The general rule is stated by one author:

"The courts uniformly hold that the oral promise to pay the price is enforceable after its bargained-for equivalent, the transfer of the land, has been executed."

2 Corbin on Contracts 443. See, also, Restatement (Second) of Contracts § 125(3):

"When a transfer of an interest in land has been made, a promise to pay the price, if originally within the Statute of Frauds, ceases to be within it unless the promised price is itself in whole or in part an interest in land."

*Malzer v. Schisler, supra,* is in accord and controls here with respect to ORS 41.580(5).

The Court of Appeals agreed with the trial court that the promise for a gravity flow connection was unenforceable, however, because Gage had no written authority to make the promise, as is required by ORS 41.580(6). Plaintiffs urge that their full performance should also take the contract out of that subsection.

The purpose of the Statute of Frauds is to prevent fraud by requiring that the evidence of certain kinds of contracts be in writing or, as in the case of ORS 41.580(6), that the authority of an agent to make one of those kinds of contracts for his principal be in writing. The requirement that there be a writing is to prevent fraudulent claims that an owner has contracted, either himself or by agent, to part with one or more interests in his land. Of course, the Statute of Frauds also protects a putative purchaser of an interest in land by making his oral promise unenforceable while the contractual obligation of the seller is yet executory.

Underlying the holdings of cases such as *Malzer v. Schisler, supra,* and the extensive list of other courts' decisions containing such holdings found in Corbin on Contracts, *supra,* appear to be two propositions. The first is that the very act of

conveyance of the interest in land, absent some evidence of donative intent on the part of the grantor, is evidence every bit as good as a writing that the grantor had an obligation to convey. The second is that the buyer should not be allowed to obtain and keep the conveyed interest in land without paying the agreed price. *See,* 2 Corbin on Contracts 444. Those two considerations are just as appropriate to holding that the contract is taken out of subsection (6) as out of subsection (5). The sellers have conveyed and the District has accepted a conveyance of the easement and retains it. It should pay what it promised for the easement.

Of course, the District differs with the plaintiffs as to what that payment was to be, but that is a matter to be decided by the trier of fact upon all the evidence, written and parol.

## Agent's Authority

Plaintiffs have contended that there is evidence in the record which would permit a jury to find that Barrett and Gage had written authority to make the promise for a gravity flow connection. Plaintiffs' fall back position is that the District clothed Barrett and, therefore, Barrett's designated person with apparent authority to make the promise in question. The District's position is that Barrett and, therefore, Gage had no authority to promise anything on behalf of the District which might be more than the District's written offer for a free connection in return for a voluntary and prompt grant of an easement. As to plaintiffs' claim of apparent authority, the District asserts that the evidence is insufficient to present a jury question as to whether the District clothed Barrett with apparent authority to make this promise for a gravity flow connection, but even if there were such evidence, a municipality can be bound only by an agent's actual authority, never by apparent authority.

### *Actual Authority*

Actual authority to act for another may be either express or implied. Express authority, of course, is just what it says. It is that authority which the principal confers upon the agent in express terms. The express authority given to an agent to do a certain thing carries with it the implied authority to do such other things as are reasonably necessary for

carrying out the given task. *See, e.g., Beeson et al v. Hegstad et al,* 199 Or 325, 330, 261 P2d 381 (1953).

█ In their brief in the Court of Appeals, the plaintiffs have drawn attention to those portions of the record that they assert provide evidence from which the jury could find written authority for Barrett to bind the District to the promise for a gravity flow connection. Our examination of those parts of the record leads us to agree with the District that the record is in part misstated in the brief and that that part of the record which is not misstated is insufficient in law, not just weight, to establish written authority for Barrett to make the promise upon which plaintiffs here claim.[1]

*Apparent Authority*

█ Apparent authority is to be distinguished from implied authority. Implied authority is such as the principal actually intends his agent to have, although that intention is to be discerned only from the nature of the task or from the acts and conduct of the principal from which the grant of power may be inferred even though not expressed. If implied authority exists there is no need to consider whether the principal has held out the agent as having certain authority. The principal will be bound to a third person by the act of the agent within his implied authority even if the third person was unaware at the time of the act that the agent's authority was only implied.

█ On the other hand, a principal may be held bound to a third person for an act of the agent completely outside the agent's implied (or express) authority if the principal has clothed the agent with apparent authority to act for the principal in that particular. In other words, the principal permits the agent to appear to have the authority to bind the principal. We have stated the elements necessary to establish apparent authority in *Jones v. Nunley,* 274 Or 591, 595, 547 P2d 616 (1976):

> "Apparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal

[1] Our disposition of this case necessitates a new trial against the District. Since we hold herein that the plaintiffs need not prove actual authority in writing to satisfy the Statute of Frauds, it may be that upon trial plaintiffs may produce evidence from which the trier of fact could find actual authority for Barrett to bind the District for the promise of a gravity flow connection.

consents to have the apparent agent act for him on that matter. The third party must also rely on that belief."

■ When plaintiffs responded to the District's letter inviting any questions they might have concerning the construction of the sewer line, the easement and the offer of a free connection, they made it clear to the District's secretary that they sought information as to whether the line would be constructed at such a depth as would permit them to have a gravity flow connection. The District's secretary directed them to contact Barrett concerning all technical matters. Barrett was a corporation; it could act only through its officers, agents and employees. Plaintiffs perforce were to deal with some live person to be selected by Barrett. In the light most favorable to plaintiffs, the evidence establishes that plaintiffs relied upon a belief that the District consented to Barrett acting for the District.

We hold that such facts, if found by the jury, are sufficient to establish the apparent authority of Barrett, acting through Gage, to make promises with respect to such technical matters as the depth to which the sewer line would be constructed and the availability to plaintiffs of a gravity flow connection.

*Doctrine of Apparent Authority as Applied to a Municipality*

■ There remains to consider the District's contention that the doctrine of apparent authority is not applicable to bind a municipality.[2] At the outset, we note that a general statement of the elements necessary to application of the doctrine of apparent authority as quoted from *Jones v. Nunley,*

---

[2] Plaintiffs did not advance any argument to dispute the characterization of the District as a municipal corporation. The legal status of a sanitary district has never been explicitly decided in Oregon. In *Twohy Bros. v. Ochoco Irrigation District,* 108 Or 1, 216 P 189 (1923), an irrigation district was held to be a municipal corporation because

"its property [is] public property, and its officers [are] public officers, elected by the legal voters of the irrigation district * * *. Such a district 'is created for a public purpose * * *.' "

A sanitary district has these features in common with irrigation districts. In a later case, *Aloha Sanitary Service v. Wilkens,* 245 Or 40, 420 P2d 74 (1966), the court refused to decide whether the sanitary district involved in that litigation was a "quasi"-municipal corporation or a "pure" municipal corporation, saying "[t]his is a purely verbal and abstract distinction." It is also unnecessary to draw such a distinction in the instant case. The District is sufficiently public and sufficiently governmental for the doctrines applicable to such bodies to apply.

*supra,* does not include all of the usually stated elements of equitable estoppel, particularly with regard to the requirement of change of position; nevertheless, both doctrines are employed to prevent one from proving an important fact to be something other than what by act or omission he has led another party justifiably to believe. Both doctrines rest upon principles of good faith and honesty and the notion that one should not be able to take advantage of the falsity of what he has led another to believe to be true. There is really no practical difference between application of one doctrine or another to hold a principal liable for the promise of the agent.

> "Although there are certain well-defined distinctions between apparent authority and estoppel, courts, in the great majority of decisions, rest the liability of the principal for transactions of the agent falling within the ambit of apparent authority on the doctrine of estoppel. [Footnotes omitted]
>
> "* * * * *
>
> "In regard to this distinction it may be observed that apparent authority, like estoppel, is generally applied by the courts to bind the principal in which case the elements of apparent authority and estoppel, in this respect, as well as the results achieved, are the same." (Footnotes omitted)

2 Williston on Contracts § 277B (3rd ed., Jaeger 1959).

For the purposes of the case at bar, discussion of the liability of the District in terms of either estoppel or apparent authority will yield the same result.[3]

---

[3]

"A most important exchange of terminology sometimes occurs in ordinary usage, converting the term 'apparent authority' into 'estoppel' or using the two as alternatives. Yet technically, there is a difference between the two. As described in the *Restatement* [Restatement (Second) of Agency § 8, comment *d*], the apparent-authority doctrines are based upon the contractual premise that one should be bound by what he says and what people hear rather than what he may intend, if that differs. Estoppel, used here in the limited sense of estoppel in pais or equitable estoppel, *is directed at the prevention of loss to innocent persons.* Its enforcement depends not only upon manifestation to third persons, and in their reasonable reliance thereon, but also upon their change of position such that it would be unjust for the principal to go back on his manifestation. Also, apparent-authority theories permit the principal to sue the third party, whereas estoppel is not thought to convey contract rights to the principal capable of affirmative assertion. Despite the technical differences, 'apparent authority' and 'estoppel' are often found in a case side by side, so that liability of a principal can be based on either or both principles." (Footnotes omitted)

Whelan, *Government Contracts: Apparent Authority and Estoppel,* 55 Georgetown Law J. 830, 832 (1967).

■　　　In support of its contention that the doctrine of apparent authority cannot apply, the District cites 10 McQuillin, Municipal Corporations, § 29.04 (3rd Ed. rev. 1981):

> "The general rule is well settled and is constantly enforced that one who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. That is, persons dealing with a municipal corporation through its agent are bound to know the nature and extent of the agent's authority in accordance with long-existing and well-settled general rules obtaining in the law of agency generally, and applying to dealings with both artificial and natural persons." (Footnotes omitted)[4]

The District does not cite, nor have we found, any applicable statute, charter, ordinance or administrative rule or regulation limiting the power of those natural persons through whom the District had to act except for a statute that requires that written contracts of the District be signed by certain members of the Board of Directors. That statute, by its text, is not applicable to a parol contract.

The District relies upon 56 Am Jur 2d, Municipal Corporations, § 527 for the proposition:

> "Simply stated, persons dealing with a municipal corporation are charged with notice of all limitations upon the authority of a municipal corporation's officers and all requirements of the law as to the manner in which such officers shall proceed."

We believe the District intended to cite § 528 rather than § 527.[5] This case is not concerned with limitations upon the

---

[4] We do not understand why the District refers us to that portion of the language from McQuillin concerning limitations on the power of the municipal corporation to contract, for we do not understand the District to argue that a promise for a gravity flow connection was beyond the District's power to make. The District does not contend that the promise was foreign to the purposes for which the District was created. Neither is there any contention that the promise was forbidden by law or against public policy. Cf. McQuillin, Municipal Corporations, § 29.04 (3rd Ed Rev 1981).

[5] The encyclopedia, Am Jur 2d, is of course not binding upon this court, but 56 Am Jur 2d, Municipal Corporations, § 527, which the District did cite to us states in part as follows:

"One of the commonest situations in which the doctrine of estoppel may be applied against a municipal corporation or other political subdivision with regard

authority of the District's officers. As already noted, the District does not contend that its officers could not have legally made this very promise. The issue is whether they held out to the plaintiffs that Barrett could make the promise on their (and thereby the District's) behalf.

Judicial reluctance to apply the doctrines of apparent authority and estoppel seems to have arisen from notions that the treasury must be protected against the ineptness of the government's agents when dealing with those who would put their own welfare above that of the citizenry as a whole. Running through some of the older decisions is the thread that those who act for the government may have less business acuity than those with whom they bargain. There was also the same kind of thinking that perpetuated the immunity of the sovereign from liability except where the sovereign might have submitted to respond for its wrongs, *ex contractu* or *ex delicto*. There was also the fear of collusion to bilk the government. For a statement which mixed the old and the new, *see Whiteside, et al v. United States*, 93 US 247, 256, 23 L Ed 882 (1876), where the court stated:

> "Different rules prevail in respect to the acts and declarations of public agents from those which ordinarily govern in the case of mere private agents. Principals, in the latter category, are in many cases bound by the acts and declarations of their agents, even when the act or declaration was done or made without any authority, if it appears that the act was done or declaration was made by the agent in the course of his regular employment; but the government or public authority is not bound in such a case, unless it manifestly appears that the agent was acting within the scope of his authority, *or that he had been held out as having authority to do the act*, or was employed in his capacity as a public agent to do the act or make the declaration for the government. Story's Agency (6th

---

to the validity of its contracts is that in which the contract is intra vires and not prohibited by law, but where the contracting power of the corporation or subdivision has been irregularly or improperly exercised. The authorities generally hold or recognize that in that situation the municipal corporation or political subdivision may be estopped to deny the validity of the contract. Thus, where a municipal corporation receives the benefit of the performance of a contract, invalid merely for the failure to comply with some formality in its execution not affecting the power of the corporation in the matter, it is thereby estopped to assert the invalidity of the contract." (Footnotes omitted)

§ 527 would appear to give more comfort to plaintiffs than to the District.

ed.) sect. 307 a; *Lee v. Munroe,* 7 Cranch, 366. [Emphasis added]

"Although a private agent, acting in violation of specific instructions, yet within the scope of his general authority, may bind his principal, the rule as to the effect of the like act of a public agent is otherwise, for the reason that it is better that an individual should occasionally suffer from the mistakes of public officers or agents, than to adopt a rule which, through improper combinations or collusions might be turned to the detriment and injury of the public."

In another context but along the lines that the citizen dealing with his government had better beware, Mr. Justice Holmes stated for the court:

"Men must turn square corners when they deal with the Government."

*Rock Island, etc. R.R. v. United States,* 254 US 141, 143, 41 S Ct 55, 65 L Ed 188 (1920). But, Mr. Justice Jackson, joined by Mr. Justice Douglas, dissenting opinion, answered some years later:

"It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street.

"I * * * would hold these agencies to the same fundamental principles of fair dealing that has been found essential in progressive states to prevent * * * disappointment."[6]

*Federal Crop Ins. Corp. v. Merrill,* 332 US 380, 387-88, 68 S Ct 1, 92 L Ed 10 (1947).

The modern trend is to apply the doctrines of apparent authority or estoppel, or both, to prevent unjust enrichment and to accord fairness to those who bargain with the agents of municipalities for the promises of the municipalities. *See,* Saltman, *Estoppel Against the Government: Have Recent Decisions Rounded the Corners of the Agent's Authority Problem in Federal Procurements?,* 45 Fordham L. Rev. 497 (1977); Whelan, *Government Contracts: Apparent Authority and*

---

[6] In referring to Mr. Justice Holmes' caveat, Judge McDermott, for the court, stated:

"[W]hile 'men must turn square corners when they deal with the Government' * * * the government ought to turn square corners when dealing with its citizens."

*Howbert v. Penrose,* 38 F2d 577, 581 (10th Cir 1930).

*Estoppel,* 55 Georgetown L.J. 830 (1967); Rapp, *Squaring Corners: A Proposal for Legislative Application of Equitable Estoppel Against the Government,* 64 Ill Bar J. 688 (1976); Comment, *Representations by Public Bodies,* 93 L.Q. Rev. 398 (1977).

In applying the principle of equitable estoppel to governmental agencies, we do not write on a clean slate in this court. We have considered the matter before. We have not sought to find every case extant in which this court has considered applying estoppel against a governmental agency, but the following are located rather easily.

As early as 1903, this court invoked the principle. In *Schooling v. Harrisburg,* 42 Or 494, 71 P 605 (1903), plaintiff sued the city for an injunction to prevent it from opening a street. In 1871 the land in question was platted as a street. Plaintiff and his grantor had used the land as a farm. Not until 1901 did the defendant city take any steps to open the street, but then it instructed the city marshal to compel the removal of all obstructions. This court held that although the street could not be lost to the city by nonuser, the city was estopped to carry out the street opening:

> "But there is no danger in recognizing the principle of an estoppel *in pais* as applicable to such cases, as this leaves the courts to decide the question, not by mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require."

42 Or at 500. The language is actually quoted from Dillon on Municipal Corporations § 675 (3rd ed).

In *Oliver v. Synhorst,* 48 Or 292, 86 P 376 (1906), plaintiff sued the street superintendent of the City of La Grande to enjoin him from removing valuable improvements made by the plaintiff in the public way. It appeared that the way had been dedicated but not opened. The ground was rough and the property lines were uncertain. Plaintiff's predecessor in good faith erected the improvements in the way, believing they were on his property. For thirteen years the city made no effort to disturb the improvements. It appeared that plaintiff would be "appreciably" and "irreparably" injured should the improvements be removed. This court recognized that plaintiff could not acquire title to the land lying within the way by the adverse user, but, approving the holding in *Schooling v.*

*Harrisburg, supra,* held that the doctrine of equitable estoppel would be applied against the city to prevent removal of the improvements.

In *County of Lincoln v. Fischer et al,* 216 Or 421, 339 P2d 1084 (1959), the county brought suit to quiet title to land it had sold on contract, under which none of the installment payments had been made. During the time between the making of the contract and an attempt by the county to cancel it, the purchaser (or his successor) made all property tax payments to the county, which accepted them. It appeared that the property had greatly increased in value in the interim. The purchaser's successor in interest tendered the full amount due and to become due under the contract and counterclaimed for specific performance. This court found that the failure to make payments under the contract was "inadvertent." Pertinent to our inquiry here, this court stated:

> "It is settled in this state that a county is subject to the same treatment that would be given to a private party in transactions of this kind, including defenses of estoppel and the like. * * *"

216 Or at 436. This court reversed the trial court and remanded for entry of a decree for specific performance in favor of the defendant.

In *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967), this court affirmed the Tax Court's holding that the county tax assessor was "estopped by his conduct" from assessing ad valorem taxes on certain automobiles held by plaintiff as of a certain January 1. It appeared that for several years the assessor had mailed cancellation forms to the taxpayer, which stated that the taxpayer had until June to file requests for cancellation. After an amendment to a governing statute setting an earlier date for filing requests, the assessor sent one copy of the old form and two copies of the new form specifying the correct date prescribed by the amendment. The taxpayer and his bookkeeper looked only at the old form and filed too late. Said this court:

> "Defendant recognizes that this court has applied the theory of an equitable estoppel to governmental agencies. *County of Lincoln v. Fischer et al,* 1959, 216 Or 421, 339 P2d 1084, and more recently in *Boyle v. City of Bend,* 1963, 234 Or 91, 380 P2d 625. *Belton v. Buesing,* 1965, 240 Or 399, 411, 402 P2d 98, recognized that doctrine but did not apply it. Defendant

claims, however, that we have only estopped a governmental agency when the agency is acting in a proprietary, as distinguished from a governmental, function. Defendant also claims that a tax collector should not be estopped in any event.

"Both *Boyle v. City of Bend*, and *Belton v. Buesing* were cases involving questions pertaining to taxation. They did not indicate any limitation to proprietary functions. The more persuasive authority elsewhere holds the tax collector should be no less bound by the equitable considerations that justify an estoppel than any other governmental agency. See, Lynn & Gerson, Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies, 1964, 19 Tax Law Review 487; *Simmons v. United States* (CCA 5th Cir 1962) 308 F2d 938; *Schuster v. C.I.R.* (CCA 9th Cir 1962) 312 F2d 311; 2 Davis, Administrative Law Treatise, ch 17 (1958). *Farrell v. Placer County,* 1944, 23 Cal2d 624, 145 P2d 570, was not a case of tax collection but the reasoning expressed is equally compelling."

The doctrine was applied against the tax collector in another case. In *Pilgrim Turkey Packers v. Dept. of Rev.,* 261 Or 305, 493 P2d 1372 (1972), this court reversed the Tax Court, which had ruled against the taxpayer. Plaintiff taxpayer, as a processor of poultry products, was eligible for a certain exemption. The statute required that proof of exemption be mailed to the county assessor by May 15. The specified form, although timely mailed, was sent by the taxpayer to the Department of Revenue and, consequently, did not reach the assessor until after the deadline. The assessor accordingly refused to allow the exemption. The prescribed form for requesting and proving the right to exemption bore the designation "State Tax Commission Form." The Commission was the predecessor of the Department of Revenue. The instructions on the reverse side of the form were ambiguous as to whether the form should be mailed to the assessor. The taxpayer called the Department of Revenue to obtain the name of the specific division to which the form should be mailed. The Department's switchboard operator, to whom the question was put, answered that she would refer the caller to the "proper person." The taxpayer put the question to the person who then answered the ring. That person advised, "Well, of course, it comes to us." This court said:

"The ambiguous nature of the form and the instructions were enough to mislead a reasonable person. This in itself

would be sufficient to estop defendant and the assessor from denying plaintiff's claim to the exemption in this case. Plaintiff's assertion of an estoppel against the taxing authority is made even stronger by the added fact that defendant misinformed plaintiff as to the proper place for filing the claim to exemption.

"In *Johnson v. Tax Commission*, 248 Or 460, 435 P2d 302 (1967), we held that the doctrine of estoppel would be applied where the taxing authorities were in part responsible for misleading the taxpayer into relying upon a tax form which was superseded by an amended form. We think that defendant's conduct in the present case was equally misleading and that, therefore, the principle of estoppel should be applied to preclude defendant and the assessor from denying an exemption to plaintiff."

This review of the cases demonstrates that equitable estoppel has been applied over the years against governmental agencies in this state. It has been applied where the agency was acting in its governmental capacity as distinguished from a municipality's proprietary capacity. It has been applied in such a sensitive area as tax collection.

All of the above cases were concerned with estoppel rather than apparent authority of an agent, but as noted earlier, for practical purposes the theories are interchangeable in the context with which a citizen dealt with a municipality in the case at bar.

Here the District, inferentially at least acting through its Board, mailed a letter to plaintiffs concerning the acquisition of an easement and an offer of compensation therefor. The letter directed the plaintiffs to call a certain telephone number should they have "*any* questions." (Emphasis added) The letter was signed by "Vicky Whisler" over the *descriptio personae,* "Recording Secretary Gleneden Sanitary District." Plaintiffs had a question. Before they voluntarily conveyed an easement over their property, they wanted to make sure they could have a free gravity flow connection. They called the specified number and put their question to the District's secretary. She told them to contact Barrett on all technical matters. A telephone call to Barrett's office produced instructions to deal with Gage. Gage promised them that the District would provide a gravity flow connection. Relying on

that course of conduct, plaintiffs executed and delivered a conveyance of the easement to the District. The District accepted the easement, recorded it and retains it.

Whether it be couched in terms of estoppel or reliance upon the District's holding out of Barrett (and necessarily some real person acting for Barrett) as an agent with whom plaintiffs might bargain for the promise of a gravity flow connection, plaintiffs are entitled to have their claim for damages for breach of that promise submitted to the jury.

We emphasize several elements in arriving at this holding. The promise to provide a gravity flow connection for the promise to convey and conveyance of the easement was *intra vires,* i.e., it was within the lawful powers of the District. Plaintiffs had neither actual nor constructive notice of any want of authority on the part of the secretary or of Barrett (Gage) to make the promise. The District, through its letter and its secretary, told plaintiffs with whom to deal with respect to their desire to obtain the gravity flow connection. The District has accepted and retained the benefit which was the consideration for the promise made on the District's behalf by Barrett (Gage).

One way to harmonize the theories of equitable estoppel and apparent authority, insofar as this case is concerned, is simply to hold that the District is estopped to deny the authority of Barrett (Gage) to bind the District if plaintiff's evidence is accepted as being true by the trier of fact.

## Disclosed Principal

As this case is presented to this court plaintiffs seek to recover damages against Barrett for breach of contract. The contract, as contended for by plaintiffs, was a promise by the District to construct its sewer line so as to afford plaintiffs a free gravity flow connection and a promise by plaintiffs to convey an easement across their real property to the District. Upon the face of it, Barrett is not a party to that contract. As a matter of evidence, plaintiffs concede that at all times material to their negotiations with Barrett they knew Barrett and Gage purported to act for the District. Indeed, their very claim of recovery against the District affirms that they believed Barrett and Gage to be acting not for Barrett but for the District.

 The general rule is well stated in Restatement (Second) of Agency § 320:

> "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."

This court stated the rule in *Porter Const. Co. v. Berry, et al,* 136 Or 80, 90, 298 P 179 (1931), as follows:

> "The agent who acts within the scope of his authority, discloses his representative capacity to the third party, and makes the contract in his principal's name, is not personally liable thereon."

Implicit in this court's decision in *Lokan v. Roberts,* 270 Or 349, 527 P2d 720 (1974), is the same rule, although it is not expressly stated. There, this court affirmed the trial court in its finding that plaintiff could not maintain an action on a contract against a person who bargained for plaintiff's personal services to be rendered for and paid for by a corporation where the defendant had disclosed that the corporation was to be the employer.

 This claim of error is before us in Barrett's brief as respondent in this case. *Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972). This is a revived issue by reason of our reversal of the Court of Appeals on the Statute of Frauds issue. *See Wiggins v. Barrett & Associates,* 53 Or App at 884, 632 P2d at 1376. *See, also, Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 605, 581 P2d 50 (1978).

Barrett's motion for a directed verdict on plaintiffs' cause of action for damages for breach of contract based upon the ground that it had acted for a disclosed principal should have been allowed, and the trial court erred in denying that motion.

The Court of Appeals is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

**LINDE, J.,** specially concurring.

This is an appealing case for giving the private parties the quid pro quo that they believed they had been promised in return for conveying an easement in their land, if the facts are as stated by plaintiffs. I write separately in order to draw

attention to the narrow holding stated in this case, and to make clear that the case is not authority for broader applications of "equitable estoppel" against government agencies that should only be decided by a majority of this court.

The present case is characterized by these facts: It is an action for breach of contract. It arises out of a negotiated acquisition by a sanitary district of an interest in real property in return for an economic consideration, the installation of a sewer connection. The disagreement is over the promised nature of that consideration, a difference in installation costs that translates into money. The lawsuit is as close as a case can get to an ordinary contract action between private parties except that defendant is a sanitary district.

On these facts this case holds only that the district may be bound by the promise of one who is in fact its agent, even though he exceeded his actual authority, if the district "clothed" the agent with apparent authority, if the promise is one that the district could lawfully make and perform, if no law, rule, or other discoverable source places the agent's act beyond his authority, if the person relying on the agent's apparent authority has no reason to know that he lacks actual authority, and if the district has accepted and retained the benefit received in return for the agent's unauthorized promise. That is a very limited holding. It does not invite a claim of "equitable estoppel" whenever someone has relied on unauthorized and erroneous information, advice, or assurances by an employee or agent of a public agency and believes that he can persuade a court that it would be inequitable to let the agency disavow its employee's unauthorized statements. It does not invite turning every administrative act into a type of promise enforceable by estoppel.[1]

I do not agree with the more general statements in the opinion on this subject, beyond the narrow holding described above. "Equitable estoppel" is one of those familiar all-purpose formulas that is invoked in a wide variety of very different situations and buries these differences under a single, appealing phrase. This is illustrated by the use of that phrase in the

---

[1]For examples of contract claims that perhaps should have been litigated as administrative acts, see N.W. Pac. Indem. v. Junction City Water Dist., 295 Or 553, 558 n. 5, 668 P2d 1206 (1983); Maddox v. Clac. Cty Sch. Dist. No. 25, 293 Or 27, 643 P2d 1253 (1981).

old turn-of-the-century opinions quoted in the present case, which may or may not have been correctly decided but have more to do with old notions of "vested rights" than with the contractual acquisition of property by a public entity that is involved here.

The range of different occasions for claims of estoppel is why the subject has long been a troubling and controversial one in administrative law.[2] Here we deal with a bilateral, negotiated contract for the transfer of property, which has been conveyed by the private parties and retained by the public agency. This is not the same as a private party's reliance on unauthorized advice about the meaning of a law or regulation, or about intended agency action, or about a claim, or many other communications of private parties with employees or apparent agents of public agencies.

The supposed reasons cited in the opinion for past reluctance to estop the government are easy to dismiss, but that does not come to grips with the issue of the applicable law. The question of estoppel does not depend on pragmatic assumptions about the vulnerability of government to collusion or the mistakes of inept employees, nor is its analysis much advanced by metaphors about square corners. The legal problem of estoppel against government is that the doctrine itself is only judge-made law, and the difference between estoppel against private parties and against government is that government, unlike private parties, itself is or can be a source of the law governing its own transactions.

A private party can seek to exclude possible estoppel by taking special care to instruct and control its employees, by publicizing its disclaimers, and by other steps to prevent claims of justified reliance, but a private party cannot exclude its operations from the doctrine itself. The government, on the other hand, obviously can exclude itself from the doctrine by legislation, short of a possible denial of due process; legislation

---

[2]In addition to the sources cited by Justice Lent, *see* Davis, Administrative Law Treatise and 1982 Supp., § 17.01-17.06; Newman, *Should Official Advice Be Reliable?—Proposals As To Esoppel and Related Doctrines in Administrative Law,* 53 Col L Rev 374 (1953); Note, *Equitable Estoppel of the Government,* 79 Col L Rev 551 (1979).

can repeal the doctrine altogether.[3] What the government can legislate explicitly it can legislate implicitly, or by delegation to subordinate public bodies. In other words, the law of apparent authority and estoppel of public agencies is a question of public law, not of general equitable doctrines. An agency generally has delegated power to specify who may speak for it on various matters. Unlike similar arrangements within private organizations, these delegations of authority within an agency are themselves law. It is important to note, therefore, that the present case excludes estoppel if a public agency has made any public record of the scope and limits of the authority of its employees or agents.

In short, "equitable estoppel" is a misleading term insofar as it papers over differences among governmental agencies, among governmental actions, and among private claims. Because government within constitutional limits and interpretation of governing statutes can provide the law governing its actions, each such claim logically depends on an analysis of that law, not on generic doctrines. In this case we have no indication that the law governing sanitary districts did not expect their property transactions with private parties to follow the ordinary law governing such contracts, including the possibility of estoppel by the acts of an agent exercising apparent authority to speak for the district in such a transaction. For that reason I concur in the holding.

---

[3] *See, e.g., Brown v. Portland School Dist. No. 1,* 291 Or 77, 628 P2d 1183 (1981) (leaving open whether notice provisions of Tort Claims Act precludes estopping an agency from denying a nonconforming notice).