Argued and submitted April 1, affirmed August 5, petition for review denied November 24, 1998 (328 Or 41)

William A. YASNOFF, M.D., Ph.D.,
*Appellant,*

*v.*

Lesley M. HALLICK, Ph.D.,
Peter O. Kohler, M.D.,
and Oregon Health Sciences University,
a public body,
*Respondents.*

(9505-03016; CA A94812)

963 P2d 747

Bernard Jolles argued the cause for appellant. With him on the briefs was Jolles, Bernstein, & Garone, P.C.

Scott G. Seidman argued the cause for respondents. With him on the brief were Don H. Marmaduke, Jon P. Stride, and Tonkon Torp L.L.P.

Before Riggs, Presiding Judge, and Landau and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Plaintiff appeals the trial court's judgment *n.o.v.* on his breach of contract claim, and the directed verdict for defendants on his claim alleging violation of 42 USC § 1983. We review the judgment *n.o.v.* to ascertain whether any evidence exists to support the jury's verdict. *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977); *King v. All Pro Services, Inc.*, 120 Or App 479, 483, 852 P2d 943 (1993). We affirm.

Plaintiff is a medical doctor with a Ph.D. in computer science. From 1987 to 1990, plaintiff was the medical director for AMA/Net, the computer network of the American Medical Association. In the summer of 1990, plaintiff began negotiations for employment at Oregon Health Sciences University (OHSU) with J. Robert Beck, M.D., director of the institution's Biomedical Information Communication Center (BICC). As a unit head and member of the OHSU's governing executive committee, Beck possessed authority to recruit, hire, and fire faculty members in support of BICC's mission: pioneering an effective and profitable system for management of health science information in Oregon. In particular, Beck believed plaintiff could be instrumental in expanding the OHSU's online health information service and making it financially viable.

From July through September 1990, plaintiff and Beck discussed conditions for plaintiff's employment with OHSU. During that time, plaintiff, who was living in Chicago, made it clear he was unwilling to move his family to Oregon without a guarantee of at least four years of employment. Those discussions resulted in a written job offer to plaintiff in October 1990. Prior to its tender, Beck neither solicited nor received the Chancellor of Higher Education's authorization for plaintiff's appointment. In his offer letter, Beck stated that plaintiff, upon acceptance of the offer, would "be enrolled in the rolling guarantee of salary program, at the date of hire, for four years[.]" In subsequent conversations, Beck told plaintiff that money from a BICC grant was on hand to pay plaintiff's salary and benefits for the four-year period.

Plaintiff accepted Beck's offer and began work for OHSU on October 1, 1990, although he did not arrive on campus until April 1991. In January 1991, plaintiff received a Notice of Appointment (NOA) from OHSU, which he was instructed to sign and return. The NOA indicated plaintiff's contract with the institution was from October 1990 to July 1991. When asked about the NOA, Beck explained it was the mechanism by which plaintiff's agreement would be implemented year-to-year and that it did not alter the existing four-year contract. Shortly thereafter, plaintiff sold his home in Chicago and moved his family to Oregon.

In February 1992, OHSU notified plaintiff that it was not bound by plaintiff's four-year contract. Citing OAR 580-21-005,[1] OHSU noted that all higher education faculty appointments in excess of one year required the chancellor's authorization. Because no authorization had been procured for plaintiff's appointment, OHSU declared that the only agreements it would recognize as binding were those contained in the yearly NOAs submitted to plaintiff. Shortly thereafter, OHSU prepared a second NOA covering July 1991 through June 1992, which plaintiff refused to sign. This document contained new language designating the NOA as the entire agreement between the parties. On April 30, 1993, the University notified plaintiff that his employment was terminated effective June 30, 1993.

■  Plaintiff sued OHSU. The majority of his claims were dismissed on summary judgment, directed verdict, or withdrawn. Plaintiff's breach of contract claim, however, was submitted to a jury which returned a verdict in his favor. The trial court granted defendant's motion for judgment *n.o.v.* and this appeal followed.

■  Plaintiff first assigns error to the trial court's entry of judgment *n.o.v.* on his breach of contract claim. A judgment

---

[1] OAR 580-21-005(1) provides:

"Each person to be appointed or reappointed as a member of the faculty shall be sent written notification of appointment and conditions and terms thereof for each period of employment. The notification shall be signed by the president, or for non-institutional personnel by the Chancellor or a designee. All appointments for a period in excess of one year must be authorized by the chancellor."

*n.o.v.* is only appropriate when no evidence exists to support the jury's verdict. *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 356 n 8, 788 P2d 428 (1990). Because the jury returned a verdict for plaintiff, we review the evidence and all reasonable inferences from it in the light most favorable to him. *Ross v. City of Eugene*, 151 Or App 656, 659, 950 P2d 372 (1997).

Plaintiff argues that OHSU breached a four-year contract when it terminated him. OHSU responds that no four-year contract existed because neither the chancellor nor his designee authorized plaintiff's appointment for that duration. Plaintiff replies that Beck had apparent authority to authorize plaintiff's four-year contract and, in fact, bound OHSU by acting on its behalf.

Specifically, plaintiff argues that under *Wiggins v. Barett & Associates, Inc.*, 295 Or 679, 669 P2d 1132 (1983), evidence presented at trial was sufficient to create a jury question whether plaintiff had an enforceable contract with OHSU. In *Wiggins*, the plaintiffs agreed to convey a sewer easement to a municipal sanitary district. In exchange for the easement, the plaintiffs required the district to promise that the plaintiffs' connection to the new system would be gravity-fed and not require the plaintiffs to install an expensive pump. The district referred the plaintiffs to the company installing the sewer lines, who in turn referred them to its field engineer, who made the requisite promise. The plaintiffs conveyed the easement, and when their new sewer connection proved unworkable without a transfer pump, they sued the district for breach of contract. The trial court held that the agreement between the parties was void because the field engineer, as an agent of the municipality, lacked authority to make the promise on behalf of the district. *Id.* at 681-82.

In reversing, the Supreme Court held that a municipality could be bound by the promise of its agent, acting beyond the scope of his actual authority, if: (1) the municipality clothed the agent with apparent authority, (2) the promise was one that the municipality could make and perform lawfully, (3) there was no statute, charter, ordinance, administrative rule, or public record putting the agent's act beyond his authority, (4) the person asserting the authority had no

reason to know of the lack of actual authority, and (5) the municipality accepted and retained the benefit it received in return for the promise. *Id.*

■    Plaintiff emphasizes the third *Wiggins* factor in arguing his theory of apparent authority. He contends that no specific *prohibition* of multiyear contracts exists in the state's administrative hiring rules. Therefore, plaintiff alleges, the contract is one the university could lawfully perform. Because the contract was not prohibited, plaintiff concludes that its formation was valid because "no statute, charter, ordinance, administrative rule, or public record" existed to which he could have turned to ascertain that Beck's promises were beyond his capacity to make or keep. Were we to agree with plaintiff, however, we would nullify the authorization requirement of OAR 580-21-005(1). We would be forced to assume that almost any multi-year employment agreement made by an agent on behalf of a state institution of higher education was valid until expressly countermanded. We would, as OHSU notes, "turn the rule on its head," replacing the chancellor's power of prospective appointment with a retrospective veto.

■■    In this case, faculty appointment procedures delineated in OAR 580-21-005 mandate the chancellor's authorization for any appointment in excess of one year. Plaintiff presented no evidence to the jury that this authorization was secured. Instead, he emphasizes the apparent authority of OHSU's agent by arguing to this court that authorization to contract *could* have been obtained. That, however, is not enough to establish a contract here. Without evidence of the chancellor's authorization, plaintiff could not have a four-year contract with OHSU as a matter of law. Plaintiff's alternative argument of contract ratification is similarly unpersuasive. Contracts with the state formed outside statutory procedures are void, and not available for ratification. *Forrester v. City of Hillsboro*, 156 Or 89, 91, 66 P2d 496 (1937). The trial court properly granted judgment *n.o.v.*

Plaintiff next assigns error to the trial court's decision to grant defendant's directed verdict motion on plaintiff's section 1983 claim. Because the contract plaintiff argues for is not valid under the circumstances, we need not reach

the merits of his argument. Plaintiff's section 1983 claim is premised on a supposed property right drawn from a void contract. As plaintiff conceded at oral argument, if no contract exists in this case, a section 1983 claim will not lie, and we agree.

Affirmed.